## SUPREME COURT.

JOHN FISHER *et al.*, respondents, agt. EDWARD ABEEL, appellant.

In the absence of proof of a custom for agents to agree with the owner of a vessel upon the lay days to be allowed the freighter, such authority (not being shown by the contract of agency), cannot be *presumed*, but it must be expressly proved.

Where no such authority is proved, the freighter is not liable on the express contract of the detention of the vessel.

Where there is no express agreement for demurrage, damages in the nature of demurrage may be recovered against the owner of the cargo when he improperly detains the vessel beyond a reasonable time for loading or unloading.

Detention of a vessel, while waiting her turn to load or unload, is not such a detention for which the owner of the cargo is liable.

Where an order for the sale and delivery of a quantity of coal was sealed up and delivered to the owner of a vessel to be taken to the coal company for the purchaser of the cargo without any specific knowledge of the owner of the vessel of what it contained, the conversation had at the time by the owner of the vessel with the agent for the coal company, as to the bargain respecting the coal, was properly received in evidence as the order introduced in evidence, and claimed to be the written contract, was not intended to embrace the whole contract, but was given in pursuance of part of it, and contained no more of it than was necessary to enable the coal company to know how much coal to deliver, and for whom, and the amount which it should advance.

*General Term, Fourth Department, February*, 1873.

APPEAL from judgment rendered for plaintiffs in Onondaga county court.

PRATT, MITCHELL & BROWN, *attorneys*, and
T. K. FULLER, *counsel for appellant, defendant.*

The plaintiff complained for a balance due on freight of a cargo of coal, and for delaying plaintiff's boat seven days, and demanded judgment for $200.

The defendant denied the complaint, except as to the bal-

ance of freight, which balance, together with the costs up to that date, were paid by defendant into court, amounting to $33 90.

1869, March 12, judgment for plaintiffs, $85 45.

1869, March 29, notice of appeal served.

1869, April 8, plaintiff's offer to reduce judgment to $50, damages and costs.

1872, March 27, judgment for plaintiffs on re-trial in county court the second time, $302 32, damages and costs.

It is from the above judgment, and from an order denying a new trial in the county court, that this appeal is taken.

The facts are briefly as follows :

The defendant was a coal-dealer at Syracuse, receiving his coal from Rondout, on the Hudson ; the plaintiffs were the owners of the canal boat, *Henry Wyker*, John Fisher master. One George Stillwell, Jr., a sort of broker in Broad street, New York, procured transportation for defendant in the usual way. His authority to act as agent for defendant is fully stated, and is the sole evidence on that subject in the case. Capt. Fisher went to Stillwell's office to procure a load for Syracuse, and obtained the order printed at fols. 112, 114. With this order he went to Rondout, and delivered it at the office of the " Delaware and Hudson Canal Company," on the 9th October, 1868. His boat was loaded in turn with stove-coal, the only size †' in due Abeel, and received his bill of lading, made out in pursuance of that order. This bill of lading was signed by Capt. Fisher in duplicate, one in the book of the company and the other taken by the captain.

The plaintiff claims to recover damages for delay in loading on a pretended verbal agreement between Fisher and Stillwell, which, if made, the undisputed proof shows that Stillwell had no authority to make. We shall submit whether the conversation detailed in the evidence amounted in law to a parol agreement to pay demurrage, claiming that it

was but the expression of an opinion and cannot have the force of an agreement.

I. 1. "The best evidence ought always to be insisted upon and received." To admit parol evidence of a contract which had been put in writing under the circumstances detailed at pages 8, 9, and 10 of the case, is an infraction of the rules of evidence, which, it seems to me, will not be allowed by this court.

2. Attention is called to the statement of the court below in the ruling at fol. 46. The defendant, relying on that statement, introduced the written order and bill of lading in evidence, which contain the written contract of shipment, and then distinctly raised the question of the admissibility of parol evidence by a motion to strike out.

It is submitted that we were entitled to have this motion granted, inasmuch as it fully appeared that the contract of shipment was in writing, signed by the captain, according to the custom, in duplicate, each party retaining a copy and acting upon it. Under this head it may be appropriate to remark the rule :

(a) Demurrage proper can only be claimed where provision is made for it in the contract of shipment (*Morse agt. Pesant*, 2 *Keyes*, 16, 18, *and cases there cited*). Since the contract in this case is in writing, and so appears by the undisputed evidence in the case, it cannot be varied, contradicted, or we submit, extended by parol.

(b) The only exception to this rule, which we find in the books is this : Damages in the nature of demurrage may be recovered by the shipowner for unwarranted detention of the vessel through the fault of the consignee ; but this is not such a case. No claim is made for damages under the exception above stated. The claim is on the parol of Stillwell, outside the order and bill of lading, and claimed to have been uttered at the time the order was given.

3. In this connection we refer to the charge of the court on this subject. The court says " If this verbal agreement

was actually made then the plaintiffs may recover on that agreement, although it is outside of the written order and bill of lading." This is at variance with the ruling at folio 46. The attention of the court was further distinctly called to this subject at fols 147-8.

Did the order contain the contract of shipment as between these parties? See plaintiff's evidence, also defendant's and Holt's evidence.

Was the bill of lading made out in pursuance of that order, and did it also contain the same contract?

We submit, therefore, that the admission of this parol testimony was error. That the refusal to strike out such parol testimony on motion of defendant, made in pursuance of the ruling at fol. 46, was error. That the charge of the court on the same branch of the case was also error.

II. We are justified from the plaintiff's evidence in saying there was not even a parol agreement by Stillwell to pay demurrage:

1. The plaintiff swears. " There was no agreement between me and Stillwell that he was to pay me demurrage— nothing was said about it."

2. The plaintiff's witness, Timmons, who went with Fisher to Stillwell's office, and is the only witness who testified to what took place there, except plaintiff and Stillwell, swears, "I can't swear that the replies of Stillwell were not made in answer to my own questions and to mine alone."

3. See Stilwell's evidence on this subject. We submit, therefore, that if the conversation was as detailed by Timmons (who seems to have been the spokesman on that occasion), it amounted to nothing more than the expression of an opinion by Stillwell, and cannot be made the basis of a contract between these parties on which to found the liability of the defendant.

4. Any verbal agreement by Stillwell was wholly unauthorized by the defendant, and was, if made by Stillwell,

beyond and outside of his agency as the uncontradicted evidence shows.

The refusal of the court to charge as requested on this branch of the case and also the charge, we submit, were errors.

The agency of Stillwell for defendant, if anything, was a special agency to give orders on the Delaware & Hudson Canal Co., in writing, for cargoes of coal, to be shipped as per those orders, to the defendant at Syracuse. He had a right to contract as to the amount of freight, the size of the cargo, the kind of coal, and the like, all of which were stated in the order given, as a guide to the company in making out their bills of lading, but he had no right or authority to contract for the payment of demurrage, which was wholly an outside matter, nor to make any statements relative thereto to bind his principal.

The rule seems to be, " A general agent binds his principal by his acts, but an agent constituted for a particular purpose, and under a limited and circumscribed authority, cannot bind the principal by any act in which he exceeds his authority (*Beals* agt. *Allen*, 18 *Johns.*, 363 ; *Citing 3d Term R.*, 757 ; *Scott* agt. *McGrath*, 7 *Barb.*, 53).

Mr. Stillwell was a broker, procuring transportation for various parties in the way of giving orders in writing for cargoes to carriers ; beyond that, in the present instance, he could not go, and swears he did not go. We submit, the court below erred on this point.

III. There was no contract between the parties binding upon either, until the cargo was loaded and the bill of lading signed. It was optional with the plaintiff to wait his turn or not, as he saw fit. He saw fit to wait, and has, we submit, no claim against defendant for waiting. He was able to ascertain, had he chosen to have done so, on his arrival at Rondout, how long it would be before he could be loaded ; but he waived the inquiry, and waited his turn for the load and signed the bill of lading. That bill of lading is the one

he took the cargo on, and further swears that he got that cargo only by reason of the order he took from Stillwell.

IV. The exception at fols. 82-4 was well taken, also fols. 85-86.

V. No damages in the nature of demurrage are, or can be, pretended in this case, because there is no proof that the delay in loading was occasioned through the fault or neglect of the defendant. The cases charge the consignee with such damages, only in cases of unreasonable dely in unloading,— that is after the cargo has been reported to him, and he thereby becomes charged with the duty of unloading within the time agreed upon, or, in the absence of such agreement, within a reasonable time (*Cross* agt. *Beard*, 26 *N. Y.*, 85).

The rules of the company at Rondout required them to load every boat in turn, in the order of arrival, for the size of coal called for in their respective orders. If they failed to do this, they would themselves become liable to parties delayed.

Such a rule is reasonable, and no delay occasioned by its operation can be deemed unreasonable, since no boat was bound to wait its operation. And furthermore, this was a matter entirely beyond the knowledge and control of the defendant, for which he ought not to be made liable.

VI. The motion for a non suit should have heen granted.

VII. The judgment should be reversed and a new trial granted, with costs to abide the event.

GOTT & GARFIELD, *for plaintiffs, respondents.*

I. The learned judge ruled correctly that the order addressed by Stillwell to the coal company did not constitute a contract between plaintiffs and defendant so as to preclude parol proof by plaintiffs as to what the contract actually was The question is raised at folio 142 of the case. The paper was a private letter written by Stillwell, as agent, addressed

to the agent of the coal company, at Rondout, containing such instructions to him as he saw fit to give. It was enclosed in an envelope, and on the outside addressed to the coal company. It was handed to one of the plaintiffs to deliver. He was not made familiar with its contents, nor was he asked to sign it. Neither was it signed by the defendant, or by any one on his behalf, meaning to have it operate as a contract (*Wood* agt. *Edwards*, 14 *Johns.*, 205; *Townsend* agt. *Corning*, 23 *Wend.*, 435; *Tucker* agt. *Wood*, 12 *Johns.*, 190; *Gage* agt. *Jaqueth*, Opinion by MULLIN, *J.*).

II. The court also properly held that the bill of lading was not conclusive upon the rights of the parties.

1. The bill of lading was made out and signed after the damages had been sustained.

2. And after the coal was actually shipped. And a bill of lading drawn under those circumstances cannot be said to merge the original contract in it. It would not apply to claim for damages already existing. The verbal agreement had been consummated and rights had accrued under it (*Bostwick* agt. *Baltimore and Ohio R.R. Co.*, 45 *N. Y.*, 716; *Corey* agt. *N. Y. C. R.R. Co.*, 45 *N. Y.*, 716).

If these two propositions are correct, then the requests to charge, with the refusals and exceptions, constitute no error.

III. The proof that the detention was the fault of the shipper aside from the agreement proved is very clear. At least it was a question for the jury.

IV. The objections and rulings at fols. 137, 139 & 141 are all covered by the stipulations found in the case at fols. 31 to 33. The judgment ought to be affirmed.

*By the Court,* MULLIN, *P. J.*—This action was brought in a justice's court by the plaintiffs to recover of the defendant damages for the detention of their canal boat, at Rondout, waiting for a load of coal to be carried for defendant to Syracuse. The defense was a general denial The

defendant was a dealer in coal in Syracuse and bought coal of the Delaware & Hudson Canal Company whose coal yard was at Rondout.

George W. Stillwell, Jr., who had an office 119 Broad street, New York city, was the agent of the defendant for the sole purpose of procuring boats to carry coal from Rondout to defendant at Syracuse.

The course of business was for captains, or owners of boats, desiring to carry a load of coal for defendant to Syracuse, to call on Stillwell, and he would give an order on the canal company to deliver to the bearer of the order a certain number of tons of coal, specifying therein the freight to be paid, with directions to advance on the freight and for tolls, a specified sum of money. The bearer of the order would carry it to the agent of the coal company, and the coal would be delivered upon it in its order.

One of the plaintiffs testified that he called on Stillwell on the 8th of October, and asked for a load of coal, Stillwell gave him an order: it was enclosed in an envelope: he never read it, and did not know its contents.

The witness was asked if he had a conversation with Stillwell, and he said he had; and when asked to state it, defendant's counsel objected to parol evidence of the bargain; as it appeared it was in writing, and the defendant's counsel offered to produce the order, and also the bill of lading, in order to exclude parol evidence of the contract. The objection and offer were overruled, and the witness said that he asked for a load of coal. He said he had some to go to Syracuse. He (witness) told him he wanted some for Syracuse, he (S.) said he would give him $1 40 per ton and load right away as soon as he, witness, could get to Rondout. He wanted to load right away, so as to make another trip. He asked S. if he would have to lay at Rondout, he said the boat could be loaded as soon as it got there: he said he would give an order for three kinds of coal, so he, witness, could be sure to load right off.

At a subsequent step of the case the order and bill of lading were put in evidence, and defendant's counsel moved to strike out the parol evidence of the contract.

It was impossible for the court to say upon the evidence of the plaintiff Fisher, before the written order was put in evidence, that it contained the contract between the parties.

The paper delivered by Stillwell was called an order. That term did not necessarily imply that it contained the contract. It was the act of one of the parties only, the contract was the act of both.

The court was right in receiving the parol evidence of the conversation between Fisher and Stillwell, and in refusing to allow the defendant to put in the written evidence, while the plaintff was giving evidence.

I am of opinion the court properly refused to strike out the parol evidence as to the time within which the boat was to be loaded.

The order was not intended to embrace the whole contract: it was given in pursuance of part of it, and contained no more of it than was necessary to enable the coal company to know how much coal to deliver and for whom and the amount which it should advance.

The boat was detained at Rondout eight days before it got a cargo. Less than a day was required to load it when its turn came. It was proved that other boats arriving after the plaintiff's, were loaded before it. The detention was some days and the damages shown to be worth from $12, to $25 per day.

Demurrage, properly so called, is the compensation provided for in the contract of affreightment, for the detention of the vessel beyond the time agreed on for loading or unloading; (*See Abbott on Shipping*, 304; *Parsons' Mercantile Law*, 362; *Clendaniel* agt. *Tuckerman*, 17 *Barb.*, 184; *Cross* agt. *Broad*, 26 *N. Y.* 85; *Moss* agt. *Pesant*, 2 *Keyes*, 16.) The agreement for it must be expressed—it is not implied.

If an agreement for demurrage, it was by Stillwell as agent for defendant and it was by parol.

To enable S. to bind the defendant by such an agreement, he must have had authority from the principal to make it. Not only is no such authority proved, but it is expressly disproved.

If the agent could make a contract for the payment of demurrage, it must result from his authority to employ vessels for the defendant.

I am not aware of any authority that recognizes any such power in such an agent. He is of course authorized to make any such contract as agents employed in the same business are authorized to make. Whether such agents are accustomed to contract for the payment of demurrage, we do not know, as no proof was given on the subject.

It would seem to be reasonable that such agents might agree upon the length of time the vessel should wait for a cargo, or for unloading, at the port of delivery.

It is important to the owner of the vessel, as well as the owner of the cargo, to know how long the vessel may be detained, as it may materially affect the price to be charged and paid for the freight.

But when, as in this case, vessels are compelled to wait their turn in being loaded, causing in one case a delay perhaps of one day, in another of ten days without fault on the part of the owner of the cargo, it might prove disastrous to him to permit his agent to bind him to load the vessel within any specified number of days.

It would seem that the plaintiff and other boat owners were under no obligation to delay until the vessel can be loaded, so that, after waiting a reasonable time, they may depart without the coal. When no time is fixed for loading or unloading it is to be done in reasonable time; and what constitutes reasonable time, is for the jury: and in determining what constitutes a reasonable time, the custom in force at the place of receiving the cargo, is to be taken into

the account, so that, if vessels are required to wait their turn, the freighter is not liable for the detention of the vessel while it is waiting its turn (*Cross* agt. *Broad*, 26 *N. Y.*, 85).

It would seem therefore that in the absence of proof of a custom for agents to agree with the owner of the vessel upon the lay days to be allowed the freighters, such authority cannot, in a case like this, be presumed, but it must be expressly proved. No such authority being proved, defendant is not liable on the express contract.

Although there is no express agreement for demurrage, damages in the nature of demurrage may be recovered against the owner of the cargo, when he improperly detains the vessel beyond a reasonable time for loading, or unloading (*See cases cited supra*).

Detention of a vessel while waiting her turn to load or unload, is not such a detention for which the owner of the cargo is liable (*Cross* agt. *Broad*, *supra*).

So that the defendant is not liable for damages in the nature of demurrage, unless he is responsible because the vessel is not loaded in her turn by the coal company.

It is said that vessels arriving after plaintiff's, were loaded before her, and she did not get her turn.

For that wrong, the defendant is not liable; but the coal company, or its agents, may be.

The detention for which defendant is responsible, is caused by his own act, and not by the act of others over whom he has no control.

When there is an express agreement by the freighter that the vessel shall be loaded, or unloaded, in a specified number of days, he is responsible for any detention beyond that, although produced by causes over which he had no manner of control (*See cases cited supra*).

This doctrine has no application to the case before us.

The judgment is erroneous and should be reversed and a new trial ordered. Costs to abide the event.