[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 87 
The Supreme Court was plainly right in holding that the owner of a vessel is entitled to recover against one who has chartered it, or has shipped goods on board of it, for an unreasonable and improper delay in unloading the cargo, by which such owner has been for a time unjustly deprived of the use of his ship, or has otherwise suffered damages. The thorough examination which that question has received at the hands of our learned brother, who prepared the opinion of the Supreme Court, appears to have convinced the plaintiffs' counsel; for the contrary position is not asserted in the printed argument submitted upon this appeal, though the point is understood to have been taken on *Page 88 
the motion for a nonsuit made at the trial. Although there was not, in the agreement for carrying these coals, any stipulation as to the time to be allowed for discharging them at their port of destination, they were consigned to the defendant by his own agents, and he was as much bound to receive them within such time and in such a manner as not to embarrass or damnify the plaintiff in the enjoyment of the use of their vessel, as the plaintiff was to carry the cargo safely to the port to which it was consigned. In every contract between these parties, where the performance by one of them presupposes some regular act to be done by the other party prior thereto, or contemporaneously, the neglect or refusal to perform such act not only dispenses with the obligation which the other was under to perform on his part, but, where the circumstances are such that, as in this case, a rescission of the contract will not afford an adequate remedy to the party who was ready to perform, he is entitled to a recompense against the delinquent party equal to the damages which such delinquency has caused him. The principle has often been applied to cases where the owner or shipper of goods has failed promptly to receive them at the port of delivery, so as to return the vessel to the general use of the owner in a reasonable time. The following authorities, most of which are commented on in the opinion of the Supreme Court, either expressly affirm this principle, or, taking it for granted, apply it to the solution of other questions. (Abbott on Shipping, 304; Horn v. Bensusan, 9 Car. P., 709;Evans v. Foster, 1 Barn. Ad., 118; Brouncker v. Scott,
4 Taunt., 1; Rodgers v. Forrester, 2 Camp., 483; Burmster
v. Hodgson, id., 488; Hill v. Idle, 4 id., 327;Clendanial v. Tuckerman, 17 Barb., 184.)
But the question presented by this appeal requires a consideration of the excuses which the shipper of goods or the charterer of a vessel may set up to excuse a delay in discharging the cargo; and upon this part of the case I think there is a distinction which has been overlooked by the Supreme Court. It is usual in charter parties to insert an agreement that a specified number of days shall be allowed for loading and *Page 89 
unloading, or for one of those operations, and that it shall be lawful for the freighter to detain the vessel for these purposes a further specified time on payment of a daily sum. (Abbott, p. 308.) A contract to the same effect is often inserted in the bill of lading where goods are sent in a general ship. (Harman v.Gandolph, Holt's N.P., 95.) This delay, and the payment agreed upon, are called demurrage. Where the contract is thus precise, the shipper of the freight is held very strictly to its terms: thus, a municipal regulation of the port, prohibiting intercourse for a limited period, by means of which there was a delay in loading; a delay occasioned by frost, or by the prohibition of a foreign government to export the stipulated cargo, or by custom house restraints, or by unlawful seizure of some part of the cargo, do not relieve the shipper from the payment of demurrage. "The merchant," as Lord ELLENBOROUGH said of this subject, "is the adventurer who chalks out his voyage." (Burmster v.Hodgson, 3 M. C., 267; Abb., p. 360.) But the rule is somewhat different when no period of delay is fixed by the contract. There a reasonable time is implied, and this is to be determined upon by a regard to all the circumstances legitimately bearing upon the case, and it is a question for the jury. Thus, in Randal v. Lynch (2 Camp., 352), forty days for loading and unloading were allowed by the terms of the charter-party, and also five pounds per day for the next ten days of delay. Owing to the crowded state of the London docks, the sloop was detained beyond the forty days. Lord ELLENBOROUGH said that a person who hires a vessel detains her, if, at the end of the stipulated time, he does not restore her to the owner. He added that he was responsible for all the various vicissitudes which may prevent him from doing so; and he further said that he considered the dock company the defendant's agents, and that the defendant was as much responsible for a delay arising from the want of a berth as if it had arisen from tempestuous weather or any other cause. It is obvious that these and a few other similar cases are based upon a consideration that the shipper, by fixing upon a number of days' delay, becomes the insurer against casualties *Page 90 
of the kind mentioned, which may prevent the loading or unloading within the specified time. He is not guilty of a breach of contract, however, if the vessel is detained a longer period than the days specified. He simply pays the additional sum according to the contract. The case is very different where there is no express contract, or, what is the same thing, if no particular period of delay is bargained for in the contract. In such cases the defendant is not charged for the payment of a sum pursuant to the terms of a contract, but for general damages for the breach of his implied agreement. This involves a greater or less degree of delinquency, and it would, therefore, be unreasonable to hold the defendant responsible if he was able to show that it was in no respect his fault that there was a delay in loading or unloading the vessel.
The cases establish the existence of this rational distinction. In the case of Randal v. Lynch, we have just seen that a delay arising from the crowded state of the London docks was charged upon the charterer of the vessel, the charter-party having specifically fixed upon forty days for the time of loading and unloading, which was exceeded for the reason mentioned. Shortly afterwards the case of Rodgers v. Forrester was tried before the same judge. It was covenant on a charter-party for demurrage. The contract provided "that the said freighter should be allowed the usual and customary time to unload the said ship or vessel at her port of discharge." The vessel was compelled to wait from the last day of August until the 20th of October, on account of the crowded state of the London docks, before the plaintiff could commence the unloading, and the cargo was not fully discharged until the 26th of that month. The defendant's counsel relied on Randal v. Lynch, where the same excuse was held to be of no avail in a case in which a specified delay had been inserted in the charter-party. Lord ELLENBOROUGH took the precise distinction I have suggested. In the case of Randal v.Lynch, he said, a specific period of forty days was fixed by the charter-party for loading and unloading the cargo. Here the stipulation is that the freighter shall be allowed the usual and customary *Page 91 
time to unload the ship in her port of discharge, which is the usual and customary time for a ship to unload a cargo of wines in the port of London, according to the evidence, where the ship gets a berth by rotation, and the wines can be discharged into the bonded warehouses." * * * "I am, therefore, of opinion that the defendant has not broken the implied covenant arising from the terms of the charter-party, to unload the ship in the usual and customary time for that purpose at her port of discharge." At a later period of the same year the case of Burmster v.Hodgson (supra), came on to be tried before Sir JAMES MANSFIELD, Chief Justice of the Common Pleas. The defendant was the consignee of a cargo of brandy brought to London in a ship of which the plaintiff was master; but as the docks were extremely crowded, sixty-three days elapsed before she could be unloaded. The action was for compensation in the nature of demurrage from the time when the ship might have been unloaded until she was completely discharged. There appears not to have been any express contract as to the time of unloading. The chief justice was of opinion that the case could not be distinguished from Rodgers
v. Forrester. "Here," he said, "the law could only raise an implied promise to do what was there stipulated for by express covenant, viz.: to discharge the ship in the usual and customary time for unloading such a cargo. That has been rigidly held to be the time within which a vessel can be unloaded in her turn into the bonded warehouses."
I am of opinion that the present case falls within the reasons of the two nisi prius cases last mentioned, and that the doctrine which was established is reasonable and just in itself. If it be conceded that the defendant had a right to require that the coals should be delivered upon his own dock, he was guilty of no fault or breach of contract in delaying the plaintiffs' vessel until she could come up to the dock by taking her turn among the other vessels which were also waiting to be discharged, unless he was guilty of some fault in suffering such an accumulation of craft laden with cargo for himself for the same wharf at the same time. The evidence which the *Page 92 
defendant offered respecting the storm on the lake was addressed to that point, and I think it should have been received. It certainly sometimes happens that a crowd of vessels arrive at a marine or a lake port very near each other, owing to their having been held back by a storm or by adverse winds. Whether, if that was the case in this instance, the defendant should be considered in fault in not providing means for unloading a greater number of vessels at one time, or whether under the actual circumstances, he ought to have engaged another wharf to receive the coals, were questions for the jury to determine. But it was a material feature of the case for the defendant to show, if he could, that it was not owing to any mismanagement of his, or of his agents or correspondents, that so many vessels were at the port laden with his property and ready to be discharged at the same time. That, it seems to me, he offered to do; but the evidence was ruled out. We think the judgment should be reversed on account of this error, and that a new trial should be awarded. We do not perceive any error in the denial of the motion for a nonsuit, because, in our view of the case, there were still questions for the jury to pass upon, namely, those which have just been mentioned.
WRIGHT, SELDEN, GOULD and SMITH, Js., concurred.
Judgment reversed, and new trial ordered.