AMARIAH LAKE *vs.* PHILO HURD AND ANOTHER.

Actions for demurrage, strictly so called, can be sustained only by proof of an express contract. The terms of such contract fix and limit the defendant's liability, and his fault or negligence is not material, unless made so by the contract.

Where, in such action, the plaintiff had contracted with the defendants to transport a cargo of coal by sea, under a bill of lading which provided that twenty-four hours after arrival at port, and notice thereof to the consignee, there should be allowed for receiving the cargo at the rate of one day (Sundays excepted) for every hundred tons thereof, after which the consignee should pay

demurrage for each day's detention, until the cargo was discharged, and the plaintiff on arriving on Sunday notified the defendants on that day, and was by them directed to take the cargo to the dock of a railroad company and there discharge it, and pursuant to such direction proceeded to the dock, and there discharged the cargo according to the requirements of the railroad company, the rules of the dock and the custom of the port, which method was the cheapest, most expeditious and most convenient, and in so doing was subjected to detention and delay. Held, 1. That by the contract the defendants had taken upon themselves all risk of detention except such as was occasioned by the plaintiff himself, and that the plaintiff, having been directed by the defendants to unload at this dock, had a right to do so in the usual way, and in conformity with the regulations of the dock, and was not responsible for delay thus occasioned. 2. That, as the contract did not by its terms prohibit notice on Sunday, and not having been made on Sunday, and neither party being required by it to do any unnecessary work on that day, and the defendants having received and acted upon the notice without objection, and having suffered no inconvenience in consequence of its having been given on Sunday, the notice was sufficient.

ASSUMPSIT for demurrage on a cargo of coal; appealed from the judgment of a justice of the peace to the Court of Common Pleas, and tried on the general issue closed to the court, before *Brewster, J.* Judgment for the plaintiff, and motion for a new trial by the defendants. The case is sufficiently stated in the opinion.

*Treat* and *Bullock*, in support of the motion.

*Blake*, contra.

CARPENTER, J. This action is brought to recover demurrage. The defence is that the detention of the vessel was not attributable to the defendants. Cases brought by owners or masters of vessels against shippers for detention are divided into two classes; first, actions for demurrage, and second, actions for damages in the nature of demurrage. The first can only be sustained by proof of an express contract. The second may be brought on an implied contract. In the first, the terms of the contract fix and limit the defendant's liability. His fault or negligence is not material, unless made so by the bill of lading. In the second, the law implies a contract that shippers shall furnish and receive cargoes within a reasonable

time. Such reasonable time is to be determined upon a consideration of all the facts and circumstances legitimately bearing upon the question. If the shipper is without fault or negligence in furnishing or receiving a cargo, he is not liable. In such cases, therefore, fault or negligence is the gist of the action. *Wordin* v. *Bemis*, 32 Conn., 268; *Cross* v. *Beard*, 26 N. Y., 85.

The action now before us belongs to the first class. The contract is express. The law therefore implies none. The defendants' liability must be determined by a reference to the contract. If that makes their liability to depend upon any fault of their own, their counsel may be right in their claim. If their contract is absolute, to pay demurrage after a given time, the question of their negligence has nothing to do with the case. That part of the bill of lading relating to this question is as follows: "And twenty-four hours after the arrival at the above named port, and notice thereof to the consignee named, there shall be allowed for receiving said cargo at the rate of one day (Sundays excepted) for every hundred tons thereof; after which the cargo, consignee, or assignee shall pay demurrage at the rate of eight cents per ton a day upon the full amount of cargo, as per this bill of lading, for each and every day's detention beyond the days above specified, until the cargo is fully discharged, which demurrage shall constitute a lien upon said cargo."

From this it is apparent that the defendants took upon themselves all the risk of detention, except detention occasioned by the plaintiff himself.

But we are of the opinion that, upon the facts detailed in the motion, the plaintiff is not justly chargeable with the detention in this case.

On his arrival at Bridgeport he proceeded to the dock of the defendants' agent and reported to him, who directed him to take the cargo to the dock of the Naugatuck Railroad Company, and there discharge it. There was on said dock certain hoisting apparatus for discharging coal directly into the cars; and it is found that it was the custom and invariable practice to unload and discharge with said apparatus into cars as

aforesaid, and that such had been the practice of these defendants. It is also found that the railroad company required all coal unloaded at their dock to be discharged directly into cars, and that they did not permit coal to be left on their dock. The method thus required was the cheapest, most expeditious and most convenient. The owner of the hoisting apparatus had adopted a rule in hiring it, that those wishing to use it must take it in the order of their arrival. At the time when the plaintiff arrived at the dock there was an unusual accumulation of vessels waiting for the use of the apparatus, and he could not then secure its use. There was a vessel in advance of the vessel of the plaintiff requiring the use of the apparatus, whose cargo was not discharged, and which was entitled according to the rules of the dock and the custom of the port to be first discharged ; the plaintiff was directed to make fast to the dock and await his turn, and pursuant to said direction the plaintiff took the position assigned him, and waited for the use of the apparatus until the vessel before him was discharged, which was done as rapidly as practicable, when he immedialely hauled his vessel under the apparatus, and was by it discharged without further delay. The delay in the discharge was occasioned solely by his inability to procure the apparatus, owing to the unusual accumulation of vessels.

As the plaintiff had been directed by the defendants to unload at this dock, we think that he had a right to unload in the usual way, and in conformity with the regulations of the owners of the dock, and was not bound to resort to a method forbidden, which required more time, was more expensive and less convenient.

It is further claimed that no legal notice of the arrival of the vessel at Bridgeport has ever been given, for the reason that the notice was given on the Sabbath. By a reference to the terms of the contract, it will be observed that it makes no allowance for Sunday in the twenty-four hours between notice of arrival and the commencement of the time for unloading, while it expressly provides for excluding Sunday from the time allowed for unloading. If the parties had intended that

notice should not be given on the Sabbath, or that the period of " twenty-four hours after arrival" should be exclusive of the Sabbath, in a contract for transportation by sea when some part of the voyage must necessarily, or probably, be upon the Sabbath, and may terminate on that day, a provision to that effect would have been inserted in the contract. The contract was not made upon the Sabbath, and does not require either party to do any unnecessary work on that day. The plaintiff has performed his part of the contract, doing all that he agreed to do. The fact that some part of it was done upon the Sabbath—a part of the voyage and notice of arrival—will not justify us in interpolating into the contract a provision which the parties themselves have not put there.

When notice was given to the defendants' agent, he received it and acted upon it without objection. The only act done by him, or required to be done, so far as we can see, was to direct the plaintiff where to discharge the cargo. That he did. And there is no evidence that he or his principals were required to do anything more, or that even against their will, nor that either of them suffered the slightest inconvenience in consequence of the day on which notice was given.

Upon these facts, it would seem that the defence is of a technical character, and that the defendants are quite as anxious to avoid their liability under the contract as to preserve the sanctity of the Sabbath.

The defence ought not to prevail, and a new trial must be refused.

In this opinion the other judges concurred.