Fisher *v.* Abeel.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]

66 381
134a 145

FISHER and others *vs.* ABEEL.

An agreement for demurrage must be express; it is not implied.

Detention of a vessel while waiting her turn to load or unload is not a detention for which the owner of the cargo is liable. The detention for which he is responsible is one caused by his own act, and not by the act of others over whom he has no control.

The plaintiff, a boat owner, applied to S., the agent of the defendant, who was a dealer in coal at Syracuse, for a load of coal, to be carried as freight for the defendant, to Syracuse. S. was the defendant's agent for the sole purpose of procuring boats to convey coal from Rondout to ·Syracuse. The agent replied that he would give an order on the coal-yard, for a load of coal of such a character that the boat would not be delayed at all. Thereupon the plaintiff received an order, which he did not read, it being enclosed in an envelope. On presenting it at the coal-yard, the plaintiff was delayed several days, waiting for his load. *Held* that the order was not intended to embrace the whole contract; and that, therefore, parol evidence of the conversation between the plaintiff and S., at the time of the delivery of the order, was admissible, to show the terms of the contract.

In the absence of proof of a custom for agents of freighters to agree with the owner of a boat upon the lay days to be allowed to the freighter for loading or unloading, authority to make such an agreement cannot be presumed, but must be expressly proved; and not being proved, the principal is not liable upon a contract made by the agent.

APPEAL by the defendant from a judgment rendered by a county court, on appeal from a justice's court.

This action was brought in a justice's court, by the plaintiffs, to recover of the defendant damages for the detention of their canal boat at Rondout, waiting for a

load of coal to be carried for the defendant to Syracuse. The defence was a general denial. The defendant was a dealer in coal in Syracuse, and bought coal of the Delaware and Hudson Canal Company, whose coal-yard was at Rondout. George W. Stilwell, Jr., who had an office at 119 Broad street, New York city, was the agent of the defendant for the sole purpose of procuring boats to carry coal from Rondout to the defendant at Syracuse. The course of business was for captains or owners of boats desiring to carry a load of coal for the defendant to Syracuse, to call on Stilwell, and he would give an order on the canal company to deliver to the bearer of the order a certain number of tons of coal, specifying therein the freight to be paid, with directions to advance, on the freight, and for tolls, a specified sum of money. The bearer of the order would carry it to the agent of the coal company, and the coal would be delivered upon it in its order.

One of the plaintiffs testified that he called on Stilwell on the 8th of October, and asked for a load of coal. Stilwell gave him an order; it was enclosed in an envelope; he never read it, and did not know its contents.

The witness was asked, if he had a conversation with Stilwell, and he said he had. When asked to state it, the defendant's counsel objected to parol evidence of the bargain, as it appeared it was in writing; and the defendant's counsel offered to produce the order, and also the bill of lading, in order to exclude parol evidence of the contract. The objection and offer were overruled, and the witness said that he asked for a load of coal; Stilwell said he had some to go to Syracuse; he (witness) told him he wanted some for Syracuse; he (S.) said he would give him $1.40 per ton and load right away, as soon as he (witness) could get to Rondout. He wanted to load right away, so as to make another trip; he asked S. if he would have to lay at Rondout; he said the boat could be loaded as soon as it got there;

Fisher *v.* Abeel.

he said he would give an order for three kinds of coal, so that he (witness) could be sure to load right off.

At a subsequent stage of the case the order and bill of lading were put in evidence, and the defendant's counsel moved to strike out the parol evidence of the contract. The motion was denied, and judgment was rendered for the plaintiff.

*By the Court,* MULLIN, P. J. It was impossible for the court to say, upon the evidence of the plaintiff Fisher, before the written order was put in evidence, that it contained the contract between the parties. The paper delivered by Stilwell was called an order. That term did not necessarily imply that it contained the contract—it was the act of one of the parties only—the contract was the act of both.

The court was right in receiving the parol evidence of the conversation between Fisher and Stilwell, and in refusing to allow the defendant to put in the written evidence, while the plaintiff was giving evidence.

I am of opinion that the court properly refused to strike out the parol evidence as to the time within which the boat was to be loaded. The order was not intended to embrace the whole contract. It was given in performance of part of it, and contained no more of it than was necessary to enable the coal company to know how much coal to deliver, and for whom, and the amount which it should advance.

The boat was detained at Rondout eight days, before it got a cargo. Less than a day was required to load it, when its turn came. It was proved that other boats arriving after the plaintiffs' were loaded before it. The detention was seven days, and the damages shown to be worth from $12 to $25 per day.

Demurrage, properly so called, is the compensation provided for in the contract of affreightment for the detention of the vessel beyond the time agreed on for load-

ing or unloading, &c. (*Abbott on Shipping*, 304. *Pars.
on Mercantile Law*, 362. *Clendaniel* v. *Tuckerman*, 17
*Barb.* 184. *Cross* v. *Beard*, 26 *N. Y.* 85. *Morse* v.
*Pesant*, 2 *Keyes*, 16.) The agreement for it must be
express ; it is not implied.

If an agreement for demurrage was made, it was by
Stilwell as agent for the defendant, and it was by
parol. To enable S. to bind the defendant by such an
agreement he must have had authority from the prin-
cipal to make it. Not only is no such authority proved,
but it is expressly disproved. If then the agent could
make a contract for the payment of demurrage, it
must result from his authority to employ vessels for
the defendant.

I am not aware of any authority that recognizes any
such power in such an agent. He is, of course, author-
ized to make such a contract as agents employed in the
same business are authorized to make. Whether such
agents are accustomed to contract for the payment of
demurrage, we do not know, as no proof was given on
the subject.

It would seem to be reasonable that such agents
might agree upon the length of time the vessel should
wait for a cargo, or for unloading at the port of delivery.
It is important to the owner of the vessel, as well as
to the owner of the cargo, to know how long the vessel
may be detained, as it may materially affect the price
to be charged and paid for freight. But when, as in
this case, vessels are compelled to wait their turn in be-
ing loaded, causing in one case a delay, perhaps, of one
day, and in another of ten days, without fault on the
part of the owner of the cargo, it might prove disastrous
to him to permit his agent to bind him to load the ves-
sel within any specified number of days.

It would seem that the plaintiffs and other boat own-
ers were under no obligation to delay until the vessel

Fisher *v.* Abeel.

can be loaded, so that after waiting a reasonable time they may depart without the coal.

When no time is fixed for loading or unloading it is to be done in reasonable time; and what constitutes a reasonable time is for the jury. In determining what constitutes a reasonable time, the custom in force at the place of receiving the cargo is to be, taken into the account; so that if vessels are required to wait their turn, the freighter is not liable for detention of the vessel while it is waiting its turn. (*Cross* v. *Beard*, 26 *N. Y.* 85.)

It would seem, therefore, that in the absence of proof of a custom for agents to agree with the owner of a vessel upon the lay days to be allowed the freighter, such authority cannot in a case like this be presumed, but it must be expressly proved. No such authority being proved, the defendant is not liable on the express contract.

Although there is no express agreement for demurrage, damages in the nature of demurrage may be recovered against the owner of the cargo, when he improperly detains the vessel beyond a reasonable time for loading or unloading. (*See cases cited supra.*)

Detention of a vessel while waiting her turn to load or unload is not a detention for which the owner of the cargo is liable. (*Cross* v. *Beard, supra.*) So that the defendant is not liable for damages in the nature of demurrage, unless he is responsible because the vessel was not loaded in her turn by the coal company.

It is said that vessels arriving after the plaintiff's were loaded before her, and she did not get her turn. For that wrong the defendant is not liable, but the coal company or its agents may be. The detention for which the defendant is responsible is caused by his own act, and not by the act of others, over whom he has no control.

When there is an express agreement by the freighter

---

---

that the vessel shall be laden or unladen in a specified number of days, he is responsible for any detention beyond that, although produced by causes over which he had no manner of control. (*See cases cited supra.*)

This doctrine has no application to the case before us.

The judgment is erroneous, and should be reversed and a new trial ordered, costs to abide the event.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]