HIRAM HALL *vs.* HENRY BARKER *et al.*

*Demurrage—when recoverable.*

Where a bill of lading is silent as to demurrage, and the vessel is unreasonably detained at the port of delivery, before being unloaded, the shipper will be liable to the master, sailing the vessel on shares and having control of her employment, (and therefore the owner *pro hac vice*) in an action of assumpsit upon the implied contract that his vessel should be discharged in a reasonable time after arrival, for the damages incurred, in the nature of demurrage, even though the bill of lading states that the cargo is to be discharged by the consignee with the assistance of the crew.

ON REPORT.

ASSUMPSIT. The declaration contained a special count as follows : "In a plea of the case for that the plaintiff, on the fourteenth day of June, A. D. 1867, was the master and had the sole possession, management and control of the schooner Mabel Hall, of 240 tons capacity, and on said day the defendants, in consideration that the plaintiff, at the special request of the defendants, undertook and promised to carry in said schooner from Vinalhaven, in Maine, to the Delaware Breakwater, so called, in the state of Delaware, a cargo of granite, and then and there to deliver the same to Maj. Charles S. Stuart, Brevet Lieutenant Col. Engineers, or his successor, at the port of Delaware Breakwater, for a freight of one dollar and sixty cents a ton, to be paid by the defendants, then and there undertook and promised that said consignee should be ready to receive and discharge said cargo immediately, and without any unreasonable delay, or to pay a reasonable compensation to the plaintiff as demurrage for all the time that the plaintiff, his crew and schooner were delayed beyond that time. And the plaintiff avers that in pursuance of said promise and undertaking on the part of the defendants, he did take said cargo and carry the same to Delaware Breakwater, in Delaware, where he arrived and was ready to discharge the same on the fourth day of July, 1867, then and there gave due notice thereof to said con

signee; but that the defendants, regardless of their said promise and undertaking, did not have said consignee or any other authorized person in readiness to receive and discharge said cargo on that day, or on any other day between that day and the twenty-second day of July, 1867; whereby the plaintiff, with his crew and schooner, was unreasonably delayed for the space of nineteen days from said fourth day of July to said twenty-second day of July, and lost their time, expenses and earnings of themselves and schooner; and the plaintiff avers that a reasonable compensation therefor, with interest to the date hereof, is one thousand dollars. Yet the defendants, notwithstanding their promise and undertaking as aforesaid, have not paid said sum, but though often thereto requested, neglect and refuse so to do."

There was this second count: "Also for that the defendants, at Augusta, on the day of the date hereof, being indebted to the plaintiff in the sum of one thousand dollars for the demurrage of a certain schooner called the 'Mabel Hall,' belonging to the plaintiff, before that time detained and kept at the Delaware Breakwater, in the state of Delaware, with a cargo of granite on board thereof, on demurrage for the space of nineteen days, in consideration thereof, then and there promised the plaintiff to pay him the same on demand; but though often thereto requested, have not paid the same, but neglect and refuse so to do. To the damage of the said plaintiff (as he says) the sum of two thousand dollars."

The bill of lading, in the ordinary form used in the coasting trade, stipulated that the stone was to be discharged by the consignee with the assistance of the crew, and made no mention of demurrage, nor of any particular number of days after arrival within which the schooner was to be discharged.

The master testified that he run the vessel "on the square halves," receiving one-half of the gross earnings and paying running expenses. He was also half owner, and had the whole control of the employment of the vessel, acting as her husband, or agent. It was admitted that his vessel was unreasonably delayed

for sixteen days, and that twenty-six dollars a day would be a fair compensation for the detention; but the defendants contended that it should be paid by the consignee (the United States) and not by them. If found liable, they were to be defaulted and damage assessed upon the foregoing basis of computation, and legal interest.

*Joseph* and *Orville D. Baker* for the plaintiff.

Capt. Hall was, *pro hac vice,* the owner, and as such, entitled to maintain this action. *Worden* v. *Bemis,* 32 Conn., 268; *Clendanil* v. *Tuckerman,* 17 Barb., 184; *Sproat* v. *Donnell,* 26 Maine, 185; *Bonzey* v. *Hodgkins,* 55 Maine, 98.

The liability for demurrage, like that for freight, is implied against the shipper by the mere fact of carriage. 3 Kent's Com.,* 203; Redfield on Carriers, § 326; 32 Conn., 268; *Cross* v. *Beard,* 26 N. Y., 85; *Sprague* v. *West,* 1 Abb. Adm., 548; *Morse* v. *Pesant,* 3 Abb. N. Y., Ap. Dec., 321; *Fisher* v. *Abeel,* 44 How'd. Prac., 432.

If the bill of lading says the consignee shall pay freight, that does not relieve the shipper of liability for it. *Moore* v. *Wilson,* 1 T. R., 659; *Domett* v. *Beckford,* 5 Barn. & Ad., 521; *Randall* v. *Lynch,* 2 Campb., 355; *Blanchard* v. *Page,* 8 Gray, 292; *Gage* v. *Morse,* 12 Allen, 410.

Demurrage stands on the same footing.

The freighter is bound not to detain the ship beyond the stipulated or usual time to load or deliver the cargo, and is responsible for all the various vicissitudes that may prevent a restoration of her within a reasonable time. 2 Kent's Com.,* 203; 2 Camp., 355, 356.

We are entitled to interest from demand, July 25, 1867. *Hall* v. *Huckins,* 41 Maine, 580; *Chadbourne* v. *Hanscom,* 56 Maine, 554; *Piscataquis R. R. Co.* v. *McComb,* 60 Maine, 290; *Bartlett* v. *Western Union Telegraph Co.,* 62 Maine, 209; *Ford* v. *Tirrell,* 9 Gray, 401; *Harrison* v. *Conlan,* 10 Allen, 85 and 87.

*A. P. Gould* and *J. E. Moore* for the defendants.

If any action is maintainable, it should be case for negligence, and not assumpsit upon a promise, when there was none. 1 Pars. Mar. Law, 262, and note 3 ; *Kell* v. *Anderson*, 10 M. & W., 498; *Robertson* v. *Bethune*, 3 Johns., 342 ; 17 Barb., 184.

The bill of lading shows that the master was to look to the consignee for his discharge, and should have sued him. *Ham* v. *Bensusan*, 9 Car. & P. 709 ; *Atty* v. *Parish*, 4 Bos. & Pul., 404; 3 Johns., 348.   The freight the shippers have paid.

The master is not entitled to sue. 1 Pars. Mar. Law, *ubi sup.* ; *Brouncker* v. *Scott*, 4 Taunton, 1; *Jesson* v. *Solly*, Id., 52 ; *Evans* v. *Forrester*, 1 B. & Ad., 118, and 20 Eng. Com. Law, 420.

APPLETON, C. J.   The defendants shipped on board the schooner Mabel Hall, of which the plaintiff was master, a quantity of rough stone, weighing 338,090 pounds, from Vinalhaven, to be delivered in good order and condition at (Port) Delaware Breakwater, unto Maj. Charles S. Stuart, Brevet Lt. Col. Engineers, or his successor at a specified freight per ton without primage and average accustomed, the stone to be discharged by the consignee with the assistance of the crew.   It was admitted that the vessel containing the stone arrived at the Breakwater in due time, but that no one being ready to receive the cargo, the plaintiff was detained there twenty-eight days beyond a reasonable time for discharging.

The plaintiff for this delay claims compensation in the nature of demurrage.   The bill of lading specifies no time within which the cargo was to be discharged, nor is there any written contract between the parties upon the subject.

The plaintiff was master of the Mabel Hall, and half owner ;— sailed the vessel on shares, victualling and manning her, and receiving half her gross earnings, acted as agent at home and abroad, had full control of her, making all contracts for freight and signed the bill of lading.   He is therefore, *pro hac vice*, to be regarded as between these parties, as the owner of the vessel and as such to

receive what may be due. *Bonzey* v. *Hodgkins*, 55 Maine, 98 ; *Clendanil* v. *Tuckerman*, 17 Barb., 185 ; *Worden* v. *Bemis*, 32 Conn., 268.

The shipper of goods is liable for freight to the ship owner. "Demurrage," as is remarked by Heath, J., in *Jesson* v. *Solly*, 4 Taunt., 53, "is only an extended freight," and the liability for freight and for demurrage stands upon the same grounds.

When there is a reservation for demurrage, either in the charter party or the bill of lading, that must control. When there is none it seems settled by all the authorities that an action for damages arising from delay on the part of the shipper in receiving goods, in the nature of demurrage, may be maintained.

The plaintiff has brought assumpsit upon the promise implied on the part of the shipper to receive the goods shipped within a reasonable time after their arrival at the port of destination. The ship-owner impliedly promises to carry the goods as speedily as may be consistent with safety, and is liable in damages for culpable neglect or unreasonable delay. It is the duty of the shipper to be ready to receive the goods at the port of discharge and to see that they are unloaded with reasonable dispatch. For the non-performance of these reciprocal obligations, the injured party has a remedy without any express stipulations to that effect. "Damages, in the nature of demurrage," observes Butler, J., in *Worden* v. *Bemis*, 32 Conn., 273, "are recoverable for detention beyond a reasonable time, in unloading only, and when there is no express stipulation to pay demurrage. They are in the nature of demurrage because they are for the detention of the vessel, and measured by the day like demurrage, and are damages because they are recovered for a breach of the implied contract of the shipper that he will receive the goods in a reasonable time. Assumpsit will lie for them because resulting from a breach of contract, but the count must be special, as for unliquidated damages in other cases of breach of an implied contract." In *Clendanil* v. *Tuckerman*, 17 Barb., 185, which was an action for freight and demurrage, it was held where there has been no special agreement

between a shipper of goods and the master of a vessel run on shares for demurrage, that if the vessel is detained an unreasonable time by the freighter or consignee the owner of the vessel may recover damages in the nature of demurrage for detention. In *Cross* v. *Beard*, 26 N. Y., 85, it was held in the absence of any express agreement as to demurrage, that a contract is implied that the owner and consignee of goods will provide for their discharge in a reasonable time, and that he is liable in damages in case of a breach of such implied contract.

The contract with the plaintiff under the bill of lading was with the shipper. *Blanchard* v. *Page*, 8 Gray, 281. As there was no provision for the payment of demurrage by the consignee, the shipper's liability for such demurrage remains equally as for freight. *Gage* v. *Morse*, 12 Allen, 410; *Chappel* v. *Comfort*, 10 C. B., (N. S.,) 802.

The defendants are liable in assumpsit upon their implied contract and are liable to pay interest from the date of the plaintiff's demand which was made upon the twenty-fifth day of July, 1867.

*Defendants defaulted.*

WALTON, DICKERSON, BARROWS, DANFORTH and PETERS, JJ., concurred.