### JOB FALKENBURG *vs.* HENRY C. CLARK.

On the back of a bill of lading was pasted a printed paper prescribing the number of lay days and the rate of demurrage to be paid by the " cargo, consignee, or assignee," after their expiration. It appearing in evidence that the consignee had received a duplicate bill of lading with a similar printed paper pasted on its back, and that he had thereafter received the cargo without objection: —

*Held,* that the printed paper was a part of the bill of lading.

In an action on the case by a ship-owner against the consignee of the cargo for demurrage: —

*Held,* that if the consignee as such had nothing to do with the shipment there would be no privity of contract between him and the ship-owner, and before acceptance of the cargo, the law would imply no contract on his part to pay demurrage; but that the evidence as to acceptance, with any explanatory testimony, should be left to the jury, with the instruction, that from an acceptance unexplained of goods under a bill of lading containing provisions for demurrage, a contract for payment of this demurrage by the consignee would be implied.

On the back of a bill of lading was an indorsement, "Pay the demurrage to order of Messrs. C. & K.," signed C. P. R., — C. P. R. being the ship's captain: —

*Held,* that the claim for demurrage could not be assigned by the indorsement so as to enable the assignee to sue in his own name; bills of lading not being negotiable so as to allow the holder to sue at common law, although made thus negotiable by statute in England and held thus negotiable in admiralty practice in this country.

*Held,* further, that this indorsement was to be construed merely as giving authority to receive the demurrage and to discharge the claim therefor.

The consignee of a cargo ordered in his own name cannot avoid liability for demurrage by giving notice to the ship captain on arrival that the cargo was ordered for a hitherto undisclosed principal.

Demurrage is a mere expression, being compensation for detention, often, but not always, regulated by contract. The rate thereof, even if agreed on, is not always concluded by the agreement.

EXCEPTIONS to the Court of Common Pleas. This action was assumpsit brought in the Court of Magistrates of the City of Providence, carried by appeal to the Court of Common Pleas, and brought into this court by the defendant's exceptions.

*January* 22, 1876. POTTER, J. In this case, Falkenburg, the plaintiff, owner of a vessel, sues Henry C. Clark, the defendant, as consignee of the cargo, in an action on the case for demurrage, or detention of his coal vessel. The first count, for book account, in its present shape, need not be considered. The second count alleges that the defendant was indebted to the plaintiff in the sum of one hundred dollars, in consideration that the plaintiff, at the special instance and request of the defendant, had before that time suffered and permitted the said defendant to retain and keep, and the said defendant retained and kept, the said ship or vessel, whereof the plaintiff was owner, with certain goods, &c., &c., on board thereof, for a long time . . . . two and three quarter days, whereby the plaintiff was put to charge and expense, deprived of the use of the vessel, and in consideration thereof promised, &c.

There are also the usual money counts, including one for money paid and laid out and expended.

Runnel, the captain of the vessel, signed four bills of lading at Alexandria, Va., August 3, 1869, receipting for 363 tons of coal, to be delivered at Providence, to the defendant or his assigns.

On the back of the bill was a memorandum in these words: "Report — 7 o'clock, A. M., 16th; high water, 3 o'clock, P. M.;" and this indorsement, "Pay the demurrage to order of Messrs. Chase & Knickerbocker;" signed, "Charles P. Runnel."

There was also a printed paper pasted on the back of the bill, containing these words in red ink: —

"And twenty-four hours after the arrival at the above named port, and notice thereof to the consignee named, there shall be allowed for receiving said cargo at the rate of one day, Sundays and legal holidays excepted, for every hundred tons thereof; after

which the cargo, consignee, or assignee, shall pay demurrage at the rate of eight cents per ton a day, Sundays and legal holidays not excepted, upon the full amount of cargo, as per this bill of lading, for each and every day's detention, and *pro rata* for parts or portions of a day beyond the days above specified, until the cargo is fully discharged; which freight and demurrage shall constitute a lien upon said cargo."

Evidence was offered to show that the captain arrived in Providence Sunday, August 15, at noon, reported to the consignee August 16, at 7 A. M., and was at the consignee's wharf at high water, 3 P. M. of that day; that he was ready to unload, but a delay was caused by sufficient cars not being provided, and he did not finish unloading until August 23d, and the plaintiff, the owner, now seeks compensation for this delay. In the Common Pleas a verdict was found for the plaintiff, under the rulings of the presiding judge. The defendant brings the case here upon exceptions to these rulings.

*First.* The defendant's counsel objected to the admission, as a part of the bill of lading, of the paper printed in red ink, which was pasted on the back of it, evidence having been offered that a similar one was pasted on the back of the duplicate sent to and received by the defendant, and asked the judge to charge that it was no part of the bill of lading, and could not be considered by the jury; but the judge did charge that it was a part of the bill of lading, and to be considered by the jury as such.

The defendant's counsel contends that a consignee or assignee of a bill of lading cannot be liable for demurrage, except on an express contract.

Of the cases he cites, *Gage* v. *Morse*, 12 Allen, 410, holds that a consignee cannot be liable, except on a promise express or implied. In that case the defendant, who was consignee, had before delivery assigned the bill of lading and had paid the freight, and the goods were delivered to his assignee. The court held there was no contract by the consignee, express or implied. In a similar case, *Lewis et al.* v. *McKee*, L. R. 2 Exch. 37, a consignee was sued. He had before acceptance assigned the bill, of which the plaintiff had notice, and delivered it to the assignee. The consignee was held not liable. So in *Smurthwaite* v. *Wilkins*, 11 C. B. (N. S.) 842. *Young* v.

*Moeller*, 5 El. & B. 7 ; also in Exchequer Chamber, 5 ¦El. & B. 755 ; and *Chappel* v. *Comfort*, 10 C. B. (N. S.) 802, were decided on their special circumstances.

In *Jesson* v. *Solly*, 4 Taunt. 52, which was against a consignee on a general count in assumpsit for demurrage, the court held that if the defendant took the goods under the bill of lading he adopted the contract.

There is some diversity in the language used by the courts as to whether, in case of the consignee's acceptance, a contract is to be implied by law, or whether the whole question is for the jury. See *Sanders et al.* v. *Vanzeller*, 2 Gale & Dav. 244 ; 4 Q. B. 260 ; *Blanchard et al.* v. *Page et als.* 8 Gray, 281, 293 ; *Cock* v. *Taylor et al.* 13 East, 399 ; approved in *Dougal* v. *Kemble et al.* 3 Bing. 383 ; *Shaw* v. *Thompson et al.* Olc. 144, 149. But we think the sound rule is (and one which we think reconciles the cases), that while if the consignee is merely consignee, and had directly or indirectly nothing to do with the shipment, there would be no privity of contract, and the law would imply no contract before acceptance ; the evidence relating to acceptance, with any rebutting or explanatory testimony, should be left to the jury, with the instruction that from an acceptance unexplained of goods, under a bill of lading containing such conditions, a contract would be implied. This seems to us the reasonable view. And this remedy may coexist with the remedy against the consignor. *Shepard* v. *De Bernales*, 13 East, 565 ; 3 Kent Com. by Holmes, \*228, note ; *Harman* v. *Clarke et al.* 4 Camp. 159 ; *Scaife et al.* v. *Tobin*, 3 B. & Ad. 523 ; *Stindt* v. *Roberts et al.* 2 Saund. & C. 212 ; *Wegener* v. *Smith*, 15 C. B. 285 ; *Pelayo* v. *Fox*, 9 Pa. St. 489. In *Evans* v. *Foster et al.* 1 B. & Ad. 118, it was held that where the bill of lading provided for freight only, the owner and not the master was the person to sue for demurrage ; the court remarking that the inconvenience of bringing two suits might be guarded against by inserting a few words in the margin, as was done in *Jesson* v. *Solly*, 4 Taunt. 52. See also *Brouncker* v. *Scott*, 4 Taunt. 1 ; *Smith* v. *Sieveking et al.* 4 El. & B. 945.

In some of these cases which hold that the consignee by receiving the goods under the bill of lading adopts the contract, the bill provided for freight only. But the principle must be the same where it provides for demurrage.

The defendant also contends that the memorandum pasted on the back was no part of the contract.

In *Jesson* v. *Solly*, 4 Taunt. 52, which was on a general count in assumpsit for demurrage, a memorandum was made at the bottom of the bill of lading that there were to be sixteen lay days, and £8 per day demurrage. The objection was raised that neither consignor or consignee had signed the bill. The objection was overruled, on the ground that the defendant might produce the counterpart if different.

In the case of *The Andover*, 3 Blatch. 303, the words "contents and weight unknown" were written with a pen at the bottom of the bill; the court (Nelson, J.) gave effect to this memorandum as showing that the bill of lading was not to be considered as binding for any particular weight.

In *Chappel* v. *Comfort*, 10 C. B. (N. S.) 802, the provision for lay days was in the margin; but no doubt was expressed as to its constituting a part of the contract. And such memoranda are mentioned as common in Abbott on Shipping, *303.

These cases show that such memoranda have been before the courts, and have been considered as a part of the contract. In *Chappel* v. *Comfort*, 10 C. B. (N. S.) 802, Willes, J., says he should rather give greater effect to what is thus written. The addition to or alteration of the printed form shows that this particular matter was especially thought of by the parties.

In the present case, the memorandum as to demurrage was on a printed piece of paper, pasted on the back of the bill.

In the case of *Wilson* v. *Tucker*, decided by this court, 10 R. I. 578, a memorandum was written on the back of a promissory note, " To be paid according to contract." The court held that the jury might infer from the writing and from the custody of the note that the memorandum was made at the time the note was executed, and that in such case it was a part of the contract.

The question whether the memorandum in this case makes a part of the contract is only important as to the question of damages. If the provision in the pasted paper is binding on the defendant by his acceptance, then there was a contract completed on the plaintiff's part which could be given in evidence under the second count. If not, then the plaintiff might under the

same count be entitled to recover for unreasonable detention as much of the amount claimed as the jury think right. Even if a rate is agreed on, it is not always conclusive. Abbott on Shipping, *306.

For while it is held in many cases that the demurrage cannot be recovered on a special count for demurrage, unless there is a special provision for demurrage, it is well settled by the more modern cases that the consignee will yet be held liable in a proper action for any delay caused by himself. Abbott on Shipping, *306; 1 Kay on Shipmaster & Seaman, 151; *Cross et al. v. Beard*, 26 N. Y. 85; *Morse et al.* v. *Pesant et al.* 2 Keyes, 16; *Ford et al.* v. *Cotesworth et als.* L. R. 4 Q. B. 127, 136; also in Exchequer Chamber, L. R. 5 Q. B. 544; and many of the English cases we have been referred to were decided more or less upon technicalities of pleading, and this is to be considered in endeavoring to extract from them any general rule of decision. *Smith* v. *Sieveking et al.* 4 El. & B. 945; also in Exchequer Chamber, 5 El. & B. 589, was an attempt to hold the consignee liable for demurrage at the port of loading. In *Moeller* v. *Young et als.* 5 El. & B. 7, reversed in the Exchequer Chamber, 5 El. & B. 755, the cargo was delivered in portions, owing to a dispute about freight, and the question was, who was to blame for the delay? The Exchequer Chamber held the consignee was not in default, and the judges lay a good deal of stress on the point that the contract was not proved as alleged. So *Sanders et al.* v. *Vanzeller*, 2 Gale & Dav. 244, was decided upon the pleadings.

Demurrage is a mere name. It is, says Story, J., *In re the Apollon*, 9 Wheat. 362, 378, merely compensation for detention often regulated by contract, but not necessarily so. It is merely an extended freight. Holt, quoted in 1 Ab. Adm. 554; *Jesson* v. *Solly*, 4 Taunt. 52. It would seem from the latter case as if a special provision for demurrage had been but lately introduced. And in *Sprague* v. *West*, 1 Ab. Adm. 548, 554, Betts, J., says: " Every improper detention of a vessel may be considered a demurrage, and compensation in that name may be decreed for it." In that case the bill of lading contained no provision for demurrage, but Betts, J., saying that the English cases hold that the freighter is liable without any express contract, and that the freighter or consignee who improperly detains a vessel is liable

for it, decreed against the consignee damages by way of demur-
rage.   The head note does not mention this.   The last two cases
were in admiralty, but the reasoning applies generally.

See the cases of *Horne* v. *Bensusan*, 9 C. & P. 709 ; *Sanders
et al.* v. *Vanzeller*, 4 Q. B. 260 ; and in *Smith* v. *Sieveking*, Ex-
chequer Chamber, 5 El. & B. 589, the judges speak with appar-
ent approval of *Jesson* v. *Solly*, 4 Taunt. 52, and *Wegener* v.
*Smith*, 15 C. B. 285, as holding that the consignee is liable for
demurrage accruing from his own delay.   See also 1 Parsons on
Shipping (ed. of 1869), 312 ; and Harris, J., in *Clendaniel* v.
*Tuckerman*, 17 Barb. (S. C.) 184, 190.   And in *Kell* v. *Ander-
son*, 10 M. & W. 498, while the question was as to when the lay
days began, Lord Abinger, p. 502, recognizes the doctrine that,
if the delay was caused by the defendant, he would be liable
in an action of the case, though not in an action for demur-
rage.

The only difference seems to be that where there is an express
agreement fixing days of demurrage, the consignee will be more
strictly held to them.   *Leer* v. *Yates*, 3 Taunt. 387 ; *Harman* v.
*Gandolph*, 1 Holt N. P. 35, and note ; *Ford et al.* v. *Cotesworth
et als.* L. R. 4 Q. B. 127, 136 ; also in the Exchequer Chamber,
L. R. 5 Q. B. 544, citing Maule & Pollock on Shipping ; see
Abbott on Shipping, *310, 317, citing *Rogers* v. *Hunter*, 2 C. &
P. 601, and 1 M. & M. 63 ; *Dobson* v. *Droop*, 4 C. & P. 112,
and 1 M. & M. 441 ; *Cross* v. *Beard*, 26 N. Y. 85.

Much of the mystery which some persons seem to consider
attached to maritime contracts would be dispelled if it was gen-
erally known that they are subject to the same rules as other
contracts.

In the present case, if we are to understand the judge as in-
tending to charge that the piece of paper pasted on the back of
the bill of lading was a part of the contract, as a matter of law
independently of the evidence, it would undoubtedly be errone-
ous.   But evidence had been offered showing that the defendant,
before receiving the coal, had received a duplicate bill contain-
ing a similar memorandum on the back, and that he made no
objection.   There was no evidence to the contrary.   Understand-
ing the judge, as we think we must, to mean that if such were
the facts the memorandum was a part of the contract, we think
there was no error.

*Second.* The defendant offered to show that the coal, although ordered in his name, was ordered for his customers, and that, as between the defendant and his customers, it was their property, they paying charges and taking all risks, and he receiving only a commission ; that this cargo was ordered .in this way of the American Coal Company, upon an order received by him from the Lippitt Woollen Company, and was their property, and was landed at defendant's wharf, and that the delay was caused by the Providence and Worcester R. R. Company not furnishing. cars in proper season upon the order of the Lippitt Woollen Company, under a contract between them and the railroad company.

And the defendant asked the court to charge that, if the jury found the coal was the property of the Lippitt Woollen Company from the time it was shipped, and the captain on his arrival had timely notice of that fact, and the delay was from the cause above stated, the defendant was not liable. But the court refused to charge as requested, and did charge the contrary.

We think the request was properly refused. The coal was not only consigned to the defendant, but was expressly ordered by him. If the defendant directly or indirectly ordered the consignment, he was of course primarily liable ; or if it was con signed to him without his request, and he nevertheless accepted it, he was liable. It is not contended that, up to the time of the vessel's arrival, the consignors, or owner, or captain knew any other person than the defendant in the transaction. If the defendant made the contract in his own name for a principal unknown to the plaintiffs, he then stands in the light of an agent for an undisclosed principal, and would be liable, — the plaintiffs knowing no other party. As consignee, he might transfer the property by assignment of the bill of lading, and might in many cases transfer the property without such assignment. This would, however, only give to such vendee the right to claim to have the coal delivered to him. But the question here is, whether, if the defendant has ordered the consignment to himself, or has accepted it, and thus made a complete contract, he can afterwards, without the consent of the other contracting. party, shift the burden from himself and compel the plaintiff to look to others for performance of a contract made with him alone.

We think he cannot. If he has made the contract he is liable for its fulfilment.

In the present case, there is no claim that the bill of lading was ever assigned by the defendant, or that the owner or master ever agreed to look to any other person than the defendant for his claim.

Others may be liable to the defendant if they have injured him in this respect, but the plaintiff is not obliged to look beyond the defendant.

*Third.* The defendant asked the court to charge that the demurrage having been assigned by the indorsement on the bill, the plaintiff could not maintain the action.

If the indorsement was intended to assign the claim for demurrage, it could not be assigned so as to enable the assignee to sue in his own name. In England, by statute 18 & 19 Vict. cap. 111, bills of lading are invested with the character of negotiability, so that the holder may sue ; and the case is so here in admiralty, but the common law remains unchanged. 1 Kay on Shipmaster & Seaman, 373.

Besides, we consider the fair construction of this indorsement is to consider it as merely an authority, or power to receive and discharge the claim. *Exceptions overruled.*

*Perce & Hallett*, for plaintiff.

*Tillinghast & Ely*, for defendant.