THE M. S. BACON *v.* THE ERIE & WESTERN TRANS-
PORTATION CO.

*(Circuit Court, W. D. Pennsylvania. ———, 1880.)*

1. DEMURRAGE—AFFREIGHTMENT.—An express stipulation for demurrage,
   in a contract of affreightment, is not necessary to entitle the owner of
   a vessel to compensation for his unnecessary or improper detention in
   loading or unloading.

2. SAME—UNLOADING VESSEL IN ITS TURN.—If the custom of the port
   requires that vessels of a certain character should be unloaded in their
   turn, such vessels must await their turn for a reasonable time, mea-
   sured by the ordinary volume and exigencies of trade at the place of
   discharge, and it is not within the province of an owner of such a
   vessel, by notice to a consignee, to define an arbitrary period within
   which the cargo must be discharged.

3. SAME—SAME.—Demurrage is not recoverable from the shipper and con-
   signee of a cargo of wheat, where a vessel was detained four days at
   the port of Erie, near the close of navigation, while waiting, in ac-
   cordance with custom, to be unloaded in its turn at an elevator, where
   there was nothing to indicate that the number of vessels consigned to
   the respondent, and in port at the same time, was extraordinary, or
   that the delay in unloading the vessel was at all unreasonable.

In Admiralty.   Appeal from the decree of the district court.

*J. M. Stoner,* for libellant and appellee.

*F. F. Marshall,* for respondent and appellant.

McKENNAN, C. J.   An express stipulation for demurrage,
in a contract of affreightment, is not necessary to entitle the
owner of a vessel to compensation for her unnecessary or
improper detention in loading or unloading.   Reasonable
promptitude in delivering a cargo at its point of shipment,
and in receiving it at its destination, is a duty implied in such
contracts, and for a violation of it damages in the nature of
demurrage are recoverable.   This is too well settled, both in
England and in this country, to need discussion or authority.

Whether the consignee of a cargo, who is not its owner, is
chargeable with such damage, it is unnecessary to consider,
because the respondent is admitted to have been the shipper
of the cargo, and hence, as a party to the contract of

affreightment, is accountable for any breach of an obligation imputed by it. *The Hyperion,* 7 Am. L. Rev. 457.

Was the vessel here subjected to unwarrantable delay in discharging her cargo? This is the decisive question in the case.

On the twentieth of October, 1876, the respondent shipped in the libellant vessel, at Chicago, a cargo of corn, consigned to itself at Erie, Pennsylvania. The vessel reached Erie on the twenty-sixth of October, and her master promptly reported to the respondent's agent, and was told that "we would unload him as soon as it came his turn; that there were four vessels ahead of him." The respondent has the control and possession of the only two elevators at Erie, and, as soon as the vessels arriving before the Bacon were unladen, the discharge of her cargo was commenced, viz., October 30th, about 2 o'clock P. M., and was finished in the forenoon of the 31st. The libellant claims damages for four days' alleged improper detention.

That it was the right of the respondent to require the cargo of the vessel to be unloaded at the Erie elevators is unquestionable, and that the facility and dispatch of such method of discharge were advantageous to the vessel, is obvious. If other vessels, with the same consignment, arrived in port before her, and were awaiting the discharge of their cargoes, she was entitled to a berth at the elevators only in her turn, and her necessary detention for a reasonable time, under these circumstances, is not imputable to the respondent as a wrong. This is the result of the proofs as to the prevailing custom at the ports on the lakes, and especially at the port of Erie, and of accepted decisions by English and American courts.

Upon this point the master of the Bacon testifies: "I don't know that it is the custom at all the lake ports for the first vessel at the elevators to be unloaded first. Of course, the first vessel at the elevator is unloaded first."

William Christie, another witness for the libellant, is more explicit: "It is customary for vessels loaded with grain to wait their turn to unload, in the order of their arrival at the

elevators; in fact, you have got to wait your turn wherever you go."

And, again, J. C. Van Scoter says: "It is the usage and custom throughout the lakes for grain-bearing vessels, consigned to the same elevators, to wait their turns to be unloaded in the order of their arrival. Of course, where an elevator is disabled, the consignee has more time."

All the testimony, on both sides, is concurrent with this, and in view of so well-established and so reasonable a custom it is not within the province of ship owners, by notice to a consignee, to define an arbitrary period within which his cargo must be discharged. If he must unload in his turn, he must await it for a reasonable time, to be measured by the ordinary volume and exigencies of trade at the place of discharge, and it would be a solecism to affirm that the consequent necessary delay can be treated as a wrong upon which to found a claim for damages.

The subject is fully discussed, and the result of the cases touching it is clearly stated, by Chief Justice Denio, in *Cross* v. *Beard*, 26 N. Y. 85, 89, 91. After speaking of the effect of an agreement for demurrage in a charter-party, he says: "But the rule is somewhat different when no period of delay is fixed by the contract. There a reasonable time is implied, and this is to be determined upon by a regard to all the circumstances legitimately bearing upon the case, and it is a question for the jury. * * * * If it be conceded that the defendant had a right to require that the coals should be delivered upon his own dock he was guilty of no fault or breach of contract in delaying the plaintiff's vessel until she could come up to the dock by taking her turn among the other vessels, which were also waiting to be discharged, unless he was guilty of some fault in suffering such an accumulation of craft, laden with cargo for himself, for the same wharf, at the same time." See, also, *Rogers* v. *Forrester*, 2 Camp. 483, and *Burmester* v. *Hodgson*, Id. 488.

The only question, then, is, was there a culpable detention of the vessel for an unreasonable time? She reported to the consignee in the afternoon of October 26th, and the discharge

of her cargo was completed in the forenoon of the 31st. Four vessels had precedence of the Bacon. There is nothing to indicate that this number of vessels consigned to the respondent, in port at the same time, was extraordinary, especially so near the period of closing navigation, nor that the delay in unloading ·the Bacon was at all unreasonable. On the contrary, all practicable dispatch seems to have been afforded her, and the respondent was not, therefore, in default.

And now, August 20, 1880, this cause having been heard upon the pleadings and proofs, and having been argued by the proctors of the parties, respectively, it is here adjudged and decreed that the decree of the district court be reversed; that the libel be dismissed, and the libellants and their stipulators pay the respondent its costs in the district court, as well as in this court, to be taxed by the clerk.