## Case No. 9,898a.

The M. S. BACON v. ERIE & W. TRANSP. CO.

[5 Cin. Law Bul. 637; 26 Int. Rev. Rec. 316.]

Circuit Court, W. D. Pennsylvania. Aug. 20, 1880.

DEMURRAGE—PROMPTNESS IN DELIVERING CARGO—CUSTOM OF UNLOADING.

1. An express stipulation for demurrage in a contract of affreightment is not necessary to entitle the owner of a vessel to compensation for the unnecessary or improper detention in loading or unloading.

2. Reasonable promptitude in delivering a cargo at its point of shipment, and in receiving it at its destination, is a duty implied in such contracts, and for a violation of it, damages in the nature of demurrage are recoverable.

3. Where it is the prevailing custom at the lake ports for grain-bearing vessels to unload in the order of their arrival, the ship owner must await his turn for a reasonable time, to be measured by the ordinary volume and the exigencies of trade at the place of discharge.

4. In view of so well established and so reasonable a custom, it is not within the province of a ship owner, by notice to a consignee, to define an arbitrary period within which his cargo must be discharged.

[Appeal from the district court of the United States for the Western district of Pennsylvania.]

In admiralty.

F. F. Marshall, for appellant.
J. M. Stoner, for appellee.

McKENNAN, Circuit Judge. An express stipulation for demurrage in a contract of affreightment is not necessary to entitle the owner of a vessel to compensation for her unnecessary or improper detention in loading or unloading. Reasonable promptitude in delivering a cargo at its point of shipment, and receiving it at its destination, is a duty implied in such contracts, and for a violation of it, damages in the nature of demurrage are recoverable. This is too well settled in England and this country to need discussion or authority. Whether the consignee of a cargo, who is not its owner, is chargeable with such damages it is unnecessary to consider, because the respondent is admitted to have been the shipper of the cargo, and hence as a party to the contract of affreightment, is accountable for any breach of an obligation imported by it. The Hyperian [Case No. 6,987]. Was the vessel here subjected to unwarrantable delay in discharging her cargo? This is the decisive question in the case.

On the 20th of October, 1875, the respondent shipped on the libellant vessel, at Chicago, a cargo of corn, consigned to itself, at Erie, Penn. The vessel reached Erie on the 26th of October, and her master promptly reported to the respondent's agent, and was told that "we would unload him as soon as it came his turn; that there were four vessels ahead of him." The respondent has the control and possession of the only two elevators at Erie, and as soon as the vessels arriving before the Bacon were unladen, the discharge of her cargo was commenced, viz.: October 30, about 2 o'clock p. m., and was finished in the forenoon of the 31st. The libellant claims damages for four days, alleging improper detention. That it was the right of respondent to require the cargo of the vessel to be unloaded at the Erie elevator is unquestionable, and that the facility and dispatch of such method of discharge was advantageous to the vessel is obvious. If other vessels with the same consignment, arrived in port before her, and were awaiting the discharge of their cargoes, she was entitled to a berth at the elevators only in her turn, and her necessary detention for a reasonable time, under these circumstances, is not imputable to the respondent as a wrong. This is the result of the proofs as to the prevailing custom at the ports on the lakes, and especially at the port of Erie, and of accepted decisions by English and American courts. Upon this point the master of the Bacon testifies: "I don't know that it is the custom at all the lake ports for the first vessel at the elevator to be unloaded first." William Christie, another witness for the libellant, is more explicit: "It is customary for vessels loaded with grain to wait their turn to unload in the order of their arrival at the elevators; in fact, you have got to wait your turn wherever you go." And again, J. C. Van Scoter says: "It is the usage and custom throughout the lakes, for grain-bearing vessels consigned to the same elevators to wait their turns to be unloaded, in the order of their arrival; of course when an elevator is disabled, the consignee has more time." All the testimony on both sides is concurrent with this. Now, in view of so well established and so reasonable a custom, it is not within the province of a ship owner by notice to a consignee, to define an arbitrary period within which his cargo must be discharged. If he must unload in his turn, he must await it for a reasonable time, to be measured by the ordinary volume and exigencies of trade at the place of discharge, and it would be a solecism to affirm that the consequent necessary delay can be treated as a wrong, upon which to found a claim for damages.

The subject is fully discussed and the result of the cases touching it is clearly stated by Chief Justice Denio, in Cross v. Beard, 26 N. Y. 85. After speaking of the effect of an agreement for demurrage in a charter party, he says: "But the rule is somewhat different when no period of delay is fixed by the contract. There a reasonable time is implied, and this is to be determined upon by a regard to all the circumstances legitimately bearing upon the case, and is a question for the jury. * * * If it be conceded that the defendant had a right to require that the coals should be delivered upon his own deck, he was guilty of no fault or breach of contract in delaying the plaintiff's vessel until she came up to the dock by taking her turn among the other vessels which were also waiting to be discharged, unless he was guilty of some fault in suffering such an accumulation of craft laden with cargo for himself, for the same wharf, at the same time." See, also, Rodgers v. Forresters, 2 Camp. 483, and Burmester v. Hodgson. Id. 488.

The only question then is, was there a culpable detention of the vessel for an unreasonable time? She reported to the consignee in the afternoon of October 26, and the discharge of her cargo was completed in the forenoon of the 31st; four vessels had precedence over the Bacon. There is nothing to indicate that this number of vessels, consigned to the respondent, in port at the same time, was extraordinary, especially so near the period of closing navigation, nor that the delay in unloading the Bacon was at all unreasonable. On the contrary, all practicable dispatch seems to have been afforded her, and the respondent was not therefore in default.

And now, August 20, 1880, this cause having been heard upon the pleadings and proof, and having been argued by the proctors of the parties respectively, it is here adjudged

and ordered that the decree of the district court be reversed, that the libel be dismissed, and the libellants and their stipulators pay to the respondent its costs in the district court, as well as in this court, to be taxed by the clerk.