## Case No. 6,363.

### HENLEY v. BROOKLYN ICE CO.

[8 Ben. 471; 14 Alb. Law J. 19.] [1]

District Court, S. D. New York. June, 1876.[2]

DEMURRAGE—CUSTOMARY DISCHARGE.

A cargo of ice was brought to New York by the schooner M. H., under a bill of lading which contained no condition as to the discharge of the cargo, except that the vessel was "to be discharged by the consignee with the assistance of the crew." At the time of her arrival there were several other vessels in port with cargoes of ice for the same consignee. They were discharged in the order in which their arrivals were reported, as was customary; and the M. H. was not discharged till fifteen days after notice of her arrival was given to the consignee: *Held*, that the consignee was not liable for demurrage.

[Cited in Finney v. Grand Trunk Ry. Co., 14 Fed. 172; Addicks v. Three Hundred and Fifty-Four Tons Crude Kainit. 23 Fed. 729; The Z. L. Adams, 26 Fed. 656; Bellatty v. Curtis, 41 Fed. 480.]

This was a libel by Alpheus Henley, master of the schooner Marcus Hunter, to recover $390, as demurrage for thirteen days' detention of the vessel. The vessel brought a cargo of ice from Dresden, Maine, to New York, under a bill of lading, by which it appeared that the cargo was shipped by the Dresden Ice Company, and was to be delivered at New York to George E. Holyoke, agent of the Brooklyn Ice Company. The libel alleged that the vessel arrived in New York on September 27th, 1874, and gave notice to the respondent on the 29th that she was ready to deliver cargo, that two days' time would have been sufficient for the discharge of the cargo, but that it was not received by the respondent till the 12th of October. The answer averred, that, when the vessel arrived, there were already several vessels with similar cargoes consigned to the respondent, which had arrived before the Hunter; that it was customary to discharge vessels in the order in which their arrival had been reported; that these vessels were so discharged; that, when the turn of the Hunter came, she was discharged in a day; and that, therefore, no demurrage was due.

Beebe, Wilcox & Hobbs, for libellant.
E. B. Cowles, for respondent.

---

## Case No. 6,364.

### HENLEY v. BROOKLYN ICE CO.

[14 Blatchf. 522.] [1]

Circuit Court, S. D. New York. June 21, 1878.[2]

DEMURRAGE—DISCHARGE OF CARGO—DUTY OF CONSIGNEE.

1. Where there is no special agreement as to the time within which a vessel is to be unloaded, the law implies that it is to be done within a reasonable time after her arrival.

[Cited in Finney v. Grand Trunk Ry. Co., 14 Fed. 172; The Mary Riley v. Three Thousand Railroad Ties, 38 Fed. 255; Bellatty v. Curtis, 41 Fed. 480.]
[Cited in Scholl v. Albany & Rensselaer Iron & Steel Co., 101 N. Y. 604, 5 N. E. 782.]

2. In the present case, it was *held* that the consignee was required only to use proper diligence in taking off his cargo in the customary way, and that he had used such diligence.

[Cited in Carsanego v. Wheeler, 16 Fed. 254; Houge v. Woodruff, 19 Fed. 137; Addicks v. Three Hundred and Fifty-Four Tons Crude Kainit, 23 Fed. 730; The Z. L. Adams, 26 Fed. 656.]

This was an appeal from a decree of the district court, dismissing the libel [Case No. 6,363], in a suit in personam, in admiralty.

Franklin A. Wilcox, for libellant.
Edward B. Cowles, for respondent.

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 14 Alb. Law J. 19, contains only a partial report.]
[2] [Affirmed in Case No. 6,364.]

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]
[2] [Affirming Case No. 6,363.]

WAITE, Circuit Justice. In the summer of 1874, the respondent was engaged in the business of shipping ice from Dresden, Maine, to Brooklyn, New York, for sale to consumers. It had no storehouses in Brooklyn, but occupied a wharf in Wallabout Basin, for the purpose of unloading vessels. Its course of business was to send out from three to six vessels a week from Dresden, according to the demand in Brooklyn, and, upon the arrival of a vessel at Brooklyn, as sales were made to consumers, unload into carts upon the dock for delivery. All the work of unloading was done between sunrise and sunset, and the business was the most active in the morning and evening, but little being usually done at midday. The usual time for the discharge of a cargo of 235 tons was three days. On September 10th, 1874, the schooner Marcus Hunter, of which the libellant was master, took on at Dresden a cargo of 235 505/1000 tons, and sailed for Brooklyn. Her bill of lading stipulated that the ice and dunnage should be discharged by the respondent, with the assistance of the crew, but made no provision for demurrage or detention. The vessel was detained unusually long upon her voyage, by calm weather, fog, head winds, and the usual accidents of navigation, and did not arrive in Brooklyn until about the 27th of September. The usual voyage was four or five days. While she was on her way, twelve or fourteen other vessels were out. All these vessels arrived about the same time. Five or six came in before she did, and the rest during the next three days. Upon his arrival, the libellant reported to the respondent, and asked to be unloaded. The vessels arriving before the Hunter were given the preference, and, owing to the difficulty of disposing of their cargoes in the usual way, as well as the unusual accumulation of arrivals, she was detained with her load on board until October 9th. The respondent then made sale of six or seven cargoes, including that of the Hunter, at a great sacrifice, to the Washington Ice Company, which had storage houses, and at once sent her to that company to unload. This was completed the next day, and she was then ready to leave. The freight due upon the ice was not all paid before the libel was filed in this case, but, although, at first, objection was made against paying unless all claim for demurrage was released, before the libel was filed, this objection was waived, and an agreement made to pay, leaving the libellant to enforce his claim for detention as he might see fit. The most of the freight was paid before the libel was filed, and the balance, upon demand, a few days thereafter.

There being no special agreement, in this case, as to the time within which the vessel should be unloaded, the law implies that it was to be done within a reasonable time after her arrival. What is reasonable in a particular case depends upon the special circumstances of that case. The libellant is presumed to have known the course of dealing by the respondent with its shipments upon their arrival in Brooklyn, and to have assumed the risks of delay in discharging which were necessarily incident to such a mode of doing business. He might have protected himself against extraordinary detention by a stipulation to that effect in his bill of lading. Having failed to do this, all he can require of the respondent is to use proper diligence in taking off his cargo in the customary way. Under the application of this rule the respondent is not in fault. While there was delay in unloading, it happened through no neglect of the respondent. The unusual accumulation of vessels at Brooklyn, caused by the accidents of navigation, necessarily occasioned delay in unloading them in the customary way. This was one of the risks of the business in which the libellant accepted employment, and against which he should have made provision by special contract, if he desired to throw the loss upon the respondent. The respondent used all the diligence which could properly be required of it, under the circumstances, to unload the vessel, after her arrival.

As the respondent had consented to pay the freight before the libel was filed, and the whole litigation has been in respect to the claim of damages for the detention, the respondent, having in fact paid the freight in full, is entitled to costs. The libel is dismissed, with costs, in both courts.