## THE Z. L. ADAMS.

### NICKERSON v. MONTGOMERY.

(*District Court, S. D. New York.* November, 1885.)

1. DISCHARGE OF CARGO—BILL OF LADING—USAGE OF TRADE—DEMURRAGE.

When a bill of lading fixes no time for the discharge of the cargo, the duty of a consignee is to use due diligence in procuring a berth, and to discharge, according to the custom of the trade; and for failure to exercise such diligence, demurrage is recoverable.

2. SAME—UPON THE FACTS ONE DAY'S DEMURRAGE ALLOWED.

The schooner Z. L. Adams arrived in New York, June 28th or 29th; and the respondents, to whom the cargo was sold, "to arrive," knowing that the facilities of their private pier were inadequate. began, on July 1st, to make inquiries for a suitable place of discharge. The inquiries were continued over the 2d and 3d, when a berth was found. Sunday and July 4th intervened. The vessel arrived at her berth on the 6th, and finished unloading on the 10th. The evidence showed four days to be a reasonable period for the discharge. *Held*, the respondents were chargeable with one day's demurrage,—June 30th, —as they showed no reason for deferring their inquiries for another berth until July 1st.

In Admiralty.

*Beebe, Wilcox & Hobbes,* for libelants.

*Geo. A. Black,* (*Scudder & Carter,*) for respondents.

BROWN, J. This action was brought to recover damages in the nature of demurrage for delay in unloading the schooner Z. L. Adams, which arrived with a cargo of 360 tons of ice, consigned to F. H. Smith, on June 28 or 29, 1880. Prior to arrival, the ice had been twice sold, to arrive, and was received by Montgomery & Co., the second vendees.

As the bill of lading fixed no period for the discharge of the cargo, the only obligation of the consignee, or his vendee, was to use due diligence in procuring a berth and to discharge, according to the custom of the trade.

The usage in respect to the discharge of ice, as a very perishable cargo, is no doubt somewhat peculiar. By the necessities of the case it must be discharged either into carts for immediate distribution at retail, as seems by the evidence to be most usual with vessels arriving in the summer season, or else sold to the wholesale dealers for

storage. The respondents were not the consignees of this ice, and I am not prepared to hold that any vendee of a consignee of cargo may keep a vessel awaiting her turn to discharge, after many prior vessels, at his own wharf, where, as in this case, he has no facilities for discharging more than one vessel at a time. See *Henley* v. *Brooklyn Ice Co.*, 8 Ben. 471; S. C. 14 Blatchf. 522. It is not necessary, however, to consider that point; because one of the respondents testified that "he found it was going to take too long" to discharge this vessel at his wharf, and he therefore set about finding another place of discharge, either among the wholesale or the retail dealers. He says he began to inquire July 1st, and followed it up till July 3d, when he found a berth at Pier 52, and gave notice at Smith's, the evident head-quarters of communication with the libelant. As July 4th and Sunday intervened, the vessel did not arrive at her berth until July 6th. She was discharged on the 10th. For the discharge of ice and the dunnage about four days appear to be a reasonable time by the evidence; and this time was not exceeded. But as the respondents are chargeable with knowledge of the facilities at their own wharf at once, on the report of the vessel, which was early on June 28th or 29th, there is no reason why they should have delayed at least one whole day before beginning to make inquiries for another berth. The respondents should be charged for this day's delay. It is uncertain from the testimony whether the schooner reported June 28th or 29th, and I therefore allow demurrage for one day only, at the rate of eight cents per ton per day, or $28.80, with interest from July 10th, $4.75, making $33.55, with costs, for which amount judgment may be entered for libelants.