JOHN L. CLYDE, Appellant, Respondent, *v.* WALTER WOOD, as Sole Surviving Partner and Doing Business under the Firm Name and Style of R. D. WOOD & COMPANY Respondent, Appellant.

Second Department, December 5, 1919.

Ships and shipping — demurrage defined — unreasonable detention necessary part of allowance for demurrage — pleading — complaint not alleging inconsistent causes of action — necessity for agreement to recover demurrage — contracts — validity of demurrage contract made after violation of shipping contract — parol evidence — consideration — counterclaim — when direction of verdict on is erroneous — abandonment of contract — sufficiency of evidence to sustain finding of negligence by defendant in loading boat.

Demurrage is the amount agreed upon or the amount allowed by law for the unreasonable detention of a vessel.

Unreasonable or unlawful detention contrary to the agreement of the parties, express or implied, is a necessary part of an allowance for demurrage, whether the amount is agreed upon as demurrage or allowed by law as damages for unlawful detention.

Accordingly a complaint in an action to recover damages for the unlawful detention of a vessel by the shipper does not contain inconsistent causes of action requiring an election, where it is alleged that the plaintiff's vessels were " unduly, unreasonably and illegally detained " by the defendant, either in the loading or discharging of cargoes, and that by reason of the unreasonable detention " the plaintiff became and was entitled to demurrage at the customary and usual and agreed rate and for the reasonable value of the loss of use of said steamer " in a stated sum.

Demurrage may be recovered without any previous agreement to pay it, if the plaintiff makes out a case of wrongful detention of his vessel.

An agreement to pay demurrage entered into after the shipper had unreasonably delayed the loading and unloading of cargoes does not vary the terms of an informal written charter party agreement which contained no stipulation as to demurrage, but it is an independent agreement which may be proven by parol.

Sufficient consideration exists for such subsequent demurrage agreement where the shipowner agrees to carry out the original agreement which by reason of the violation thereof by the shipper he would have been justified in terminating.

In an action to recover demurrage it is error for the court at the close of the plaintiff's case to direct a verdict in favor of the defendant on a counter-

claim based on the failure of the plaintiff to transport a part of the merchandise agreed to be transported, where the plaintiff in his reply denied the allegations of the counterclaim and alleged affirmatively that if he failed to carry any part of the merchandise, it was due solely to defendant's failure to furnish or unload cargoes at destination according to the contracts between the parties.

A letter written by the plaintiff late in October stating that by reason of the delay in unloading he might be unable to get back before transportation was closed by the ice cannot be considered an abandonment of the contract as a matter of law, where thereafter plaintiff tendered his boats and the defendant loaded them.

In the plaintiff's second cause of action he claimed damages to his boat alleged to have been caused by the negligent loading by the defendant. Evidence examined, and *held*, to justify the jury's finding in favor of the plaintiff.

APPEAL by the plaintiff, John L. Clyde, from so much of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 26th day of April, 1919, as dismisses the first cause of action set up in the complaint, and also from so much of said judgment as grants defendant a recovery upon his first and third counterclaims.

Appeal by the defendant, Walter Wood, from so much of said judgment as awards plaintiff the sum of $1,000 on his second cause of action upon the verdict of a jury, and also from an order entered in the office of the clerk of the county of Kings on the 14th day of May, 1919, denying defendant's motion to set aside the verdict of the jury in plaintiff's favor for the sum of $1,000 and for a new trial of said cause of action made upon the minutes.

The court on the trial granted a dismissal of the first cause of action set up in the complaint at the close of plaintiff's case. It directed a verdict in defendant's favor on his first and third counterclaims. The second counterclaim was withdrawn and the issue raised by plaintiff's second cause of action and the answer was separately submitted to the jury who rendered a verdict in his favor.

The first cause of action dismissed by the trial judge was for recovery of $2,010 damages for demurrage or unreasonable detention of certain vessels of the plaintiff engaged in defendant's service. The verdict directed against plaintiff on the

first counterclaim, $452.82, and on the third counterclaim, $62.50, was for damage alleged to have been sustained by defendant because of plaintiff's refusal to perform a contract to transport iron pipe from defendant's factories at Camden and Florence, N. J., to various points in New York and Connecticut. There was a second counterclaim in the answer for another item of damage alleged because of non-performance of the contract by plaintiff, but this was disallowed by the court and was afterwards withdrawn by defendant.

The action was commenced on the 15th day of January, 1918. The complaint contains two causes of action. In the first cause of action the plaintiff alleges that in the year 1917 he was engaged in the business of transporting freight for hire and that he was " the owner of the steamer ' Queen ' and of the barges or consorts ' Edmund K. Taylor,' ' Samuel Taylor ' and ' Wallace Guilford;' " that during the year 1917 he made certain agreements with the defendant, who was engaged in business in Philadelphia, Penn., by which plaintiff agreed to furnish his steamer and barges for the transportation of cast iron pipe from defendant's foundries at Florence and Camden, N. J., to various ports and consignees as directed by defendant, for which service defendant agreed to pay plaintiff by the ton of freight transported. Plaintiff goes on to allege that he furnished his steamer and barges as agreed and placed the same subject to the direction of the defendant and his servants, and that he undertook various trips and voyages to and from defendant's plant and Bridgeport, Conn., New Rochelle, N. Y., and other places as directed by defendant. But plaintiff avers that upon several of the trips or voyages, detailed in the complaint, his vessels " were, under the direction of the defendant, unduly, unreasonably and illegally detained by said defendant, his agents or servants, either in the loading of the said cargoes or in the discharging of the said cargoes, or both, and that, after deducting the ordinary and customary and agreed number of lay days, which are usually allowed for the loading or discharging of said cargoes, and excluding Sundays during the period of lay days, the said steamer and consorts were unreasonably detained," and then follows a detailed statement of the particular voyages between May 5, 1917, and December

4, 1917, six voyages in all, plaintiff claiming an aggregate undue detention of thirty-two days. Plaintiff proceeds to allege that by reason of this unreasonable detention " the plaintiff became and was entitled to demurrage at the customary and usual and agreed rate and for the reasonable value of the loss of use of the said steamer and consorts," in the sum of $40 per day for the steamer, and $10 per day for each of the barges, the sum total being $2,010.

This is the first cause of action, which was dismissed by the learned trial judge, and the plaintiff duly excepted.

This is the first subject in plaintiff's appeal.

The learned judge directed a verdict in favor of defendant on the first and third counterclaims set out in the answer. The first counterclaim avers that on September 25, 1917, plaintiff agreed to transport for defendant 650 tons of pipe from Camden to New York lighterage limits, at $1.50 per ton, free loading, and boats to discharge on dock; that defendant performed his obligations under the contract, but plaintiff " failed and neglected for a long period of time to deliver under said contract 130 tons of pipe carried by him from Camden to New York," to defendant's damage $1,500. Upon this counterclaim the trial judge directed a verdict in defendant's favor for $452.82. The third counterclaim alleged a contract on August 31, 1917, to transport 600 tons of pipe from Florence, N. J., to Brooklyn at $2 per ton, the pipe to be unloaded by plaintiff, and wrongful refusal by plaintiff to carry 500 tons of the pipe, and failure and neglect to deliver 100 tons thereof " for a long period of time " to defendant's damage $1,500. Upon this counterclaim a verdict was directed in favor of the defendant for $62.50. The plaintiff duly excepted to each direction of a verdict.

*Matthew W. Wood,* for the plaintiff.

*Herman S. Hertwig* [*William Montague Geer, Jr.,* with him on the brief], for the defendant.

KELLY, J.:

Considering first the dismissal of plaintiff's first cause of action for demurrage or damages for unreasonable or undue delay of his vessels. I think the learned trial justice erred in

dismissing the first cause of action. Immediately on the opening of the case, the court having properly denied a motion to dismiss the first cause of action upon the ground that no cause of action was stated, the defendant's counsel said: " Do I understand that counsel elects to proceed on the theory of express contract for demurrage? If he intends to claim both I want to compel him to elect. Mr. Wood: I understand that I am not compelled to elect at this time. The Court: I will require you to. Mr. Wood: I do say there was an agreed rate of demurrage. The Court: And you elect to proceed upon that? Mr. Wood: Under direction of the Court." The complaint presents no conflict in the cause of action alleged, which is for damages for undue or unreasonable detention of plaintiff's vessels for thirty-two days over the ordinary and customary and agreed number of days which are usually allowed for the loading and discharging of cargoes. Counsel for defendant had said in urging his motion to dismiss, that the plaintiff would have to proceed upon one of two theories, either express contract for demurrage, or unreasonable detention. " He has not alleged anywhere in his complaint any agreement between the parties for demurrage; he has alleged, in one place, that the boats were unreasonably detained, but he has not alleged any damages flowing from the unreasonable detention." Although defendant had properly stated that the plaintiff had not alleged an agreement between the parties for demurrage, the court compelled plaintiff to elect and his counsel said: " I do say there was an agreed rate of demurrage." I think he had in mind that there was a usual, customary, agreed rate of demurrage, when it was allowable, on vessels of the class in question. The cause of action in the complaint was for unreasonable detention, and plaintiff had alleged that because of the unreasonable detention he became entitled to the money demanded for " loss of use of the said steamer and consorts." The statement of defendant's counsel, that plaintiff had not alleged any damage flowing from the unreasonable detention, was, in my opinion, erroneous. The plaintiff testified that the delay having occurred on the first voyage, " I protested against the delay and told him [defendant's agent] it wasn't according to agreement, that all those contracts were based

upon prompt loading, and Mr. Morton [defendant's agent] admitted that it wasn't and said that he would arrange with me for a settlement satisfactory for the demurrage at the usual rate that boats of that kind are entitled to." This was competent evidence against defendant, but not of a preliminary contract. The jury might have found that it was an admission that defendant had unreasonably delayed the vessels and promised to adjust the claims later on. It was admitted that Morton had full authority to bind defendant.

Demurrage is the amount agreed upon, or the amount allowed by law for unreasonable detention. (Black Law Dict. " Demurrage," and see 2 Words & Phrases, title " Demurrage.") Unreasonable or unlawful detention contrary to the agreement of the parties, express or implied, is a necessary part of an allowance for demurrage, whether the amount is agreed upon as demurrage or allowed by law as damages for wrongful detention. I cannot agree with defendant's contention that the complaint does not state a cause of action for demurrage or unreasonable detention.

Defendant argues that all testimony of plaintiff designed to show a parol agreement for demurrage was improper and should have been excluded, because it was not provided for in the original letters or contracts or bills of lading. He says it is a part of the compensation or an " extended freight " for the use of the vessel, and he insisted at the trial that the captain's evidence of his complaints to defendant's manager about delay, his demands for demurrage, and the manager's promise to adjust the matter at the close of the contract was an attempt to vary a written agreement by parol. He moved to dismiss this first cause of action " on the ground * * * that the plaintiff has failed to prove any agreement for demurrage or any agreement in accordance with the claim he sets up in his complaint. There is no consideration for it, and a variation of the written agreement between the parties." The court granted the motion without giving his reasons. But demurrage may be recovered without any previous agreement to pay it — if the plaintiff makes out a case of wrongful detention of his vessel. If it be argued that plaintiff " elected " to proceed upon the theory of an agreement to pay demurrage, I think there was evidence that

when the wrongful detention of the vessels became apparent, something not anticipated by either party at the date of the original agreement, the defendant then agreed to adjust the matter and to pay any lawful claim which plaintiff might have.   Probably this was what the plaintiff had in mind when he " elected " to proceed on the theory of an agreement. Not a preliminary agreement, which was not necessary, because delay was not contemplated, but a subsequent agreement made when the new conditions presented themselves.   I am quite clear that the rule as to varying written instruments by parol was not violated.   The head note in *Cross* v. *Beard* (26 N. Y. 85) in part states as follows: " In the absence, however, of express agreement, a contract is implied that the owner and consignee of goods will provide for discharging them in a reasonable time, to be ascertained by the jury from a consideration of all the circumstances." DENIO, Ch. J., in the opinion says: " The Supreme Court was plainly right in holding that the owner of a vessel is entitled to recover against one who has chartered it, or has shipped goods on board of it, for an unreasonable and improper delay in unloading the cargo, by which such owner has been for a time unjustly deprived of the use of his ship, or has otherwise suffered damages.   *   *   *   It is usual in charter parties to insert an agreement that a specified number of days shall be allowed for loading and unloading   *   *   *. But the rule is somewhat different when no period of delay is fixed by the contract.   There a reasonable time is implied, and this is to be determined upon by a regard to all the circumstances legitimately bearing upon the case, and it is a question for the jury."   And in *Scholl* v. *Albany, etc., Iron & Steel Co.* (101 N. Y. 602) Judge ANDREWS says: " It seems to be the prevailing doctrine that a consignee, who at the same time is the owner of the cargo, is liable to the owner or master of the vessel for damages in the nature of demurrage, for an unreasonable delay in discharging the vessel after arrival, although the bill of lading contains no stipulation as to demurrage, and prescribes no time within which the cargo shall be discharged. (*Henley* v. *Brooklyn Ice Co.*, 14 Blatchf. 522; *Cross* v. *Beard*, 26 N. Y. 85; *Fulton* v. *Blake*, 5 Biss. 371.) " The learned trial justice admitted evidence of the promise

of defendant to adjust plaintiff's claim for demurrage, " not because it is in variance with the terms of any other contract, but because it is claimed to be an entirely different contract," which I think was the correct rule. It must be remembered that these " written contracts " were not formal charter party agreements, but letters signed by the plaintiff, a barge captain, upon the letter paper of the defendant, containing no details or conditions. There was nothing unlawful in the contract to pay for the unreasonable delay. The plaintiff promptly protested and he went ahead on defendant's promising to do what was right. There was consideration for the agreement. Defendant's violation of the contract in failing to load the vessel with reasonable promptness justified the plaintiff in terminating the agreement; on the faith of defendant's promise he went on with the agreement and made the subsequent agreements. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. at 211.) That there was evidence of unusual delay in the loading of plaintiff's vessels cannot be controverted. The defendant's agent practically admitted it. When we consider his testimony that a reasonable time for " *loading, transporting and delivering* " a cargo was " fifteen or twenty days," the significance of a delay of fifteen to eighteen days in *loading* alone is apparent. There were " lay days," but allowing for the lay days, there was evidence which would justify a jury in finding that was undue delay. I think the nonsuit as to the first cause of action should be reversed and a new trial granted.

I also think that the trial judge erred in directing a verdict for defendant upon the first and third counterclaims. The first counterclaim is predicated upon the letter of September 25, 1917, calling for the transportation of 650 tons of pipe from Camden to New York. This contract was made simultaneously with plaintiff's Exhibit 3, calling for transportation of 507 tons of pipe from Camden and Florence to New Brighton. There was no time limit stated in the letters, but of course it is implied that the transportation would be performed in a reasonable time and in accordance with the usual method of business. The defendant says that plaintiff transported but 130 tons of the 650 tons of pipe mentioned in Exhibit 6, and as to the remaining 520 tons plaintiff did not

transport them at all. The defendant, alleging that he was obliged to ship the 520 tons by rail to New York at an increased expense of $452.82, claimed $1,500 damages, the balance being made up of loss of interest, etc., on payments due defendant from the city for the pipe, which damage he said was caused by the delay. The trial judge, however, disallowed everything but the excess freight, for which he directed a verdict.

The plaintiff's reply to this counterclaim consists of a denial and an affirmative allegation that if plaintiff failed to carry any of the pipe it was due solely to defendant's failure to furnish cargoes or unload cargoes at destination according to the contracts between the parties. I think this affirmative allegation, if proved, was sufficient excuse for delay in performance on plaintiff's part.

The parties agree that it was intended that the series of contracts beginning in May and running to December, when navigation in the canal was closed on account of ice, should be performed one after the other unless otherwise directed by defendant. That is, the plaintiff's fleet of vessels was to do the work and so was to engage in performing the first contract before it could undertake the second, and so on. As already stated, the evidence on both sides was that the ordinary time for loading, transportation and delivery was from fifteen to twenty days. It is apparent that if defendant failed to have his cargo ready and to load in the usual time, or there was unreasonable delay in unloading, the plaintiff's vessels would be delayed in returning to Florence or Camden for the performance of the contract next in order. The plaintiff insists that the evidence raised an issue as to this delay, and I think it was for the jury to determine whether the delay or non-delivery was the fault of the defendant.

I do not think the plaintiff's letter of October 23, 1917, constituted a refusal or abandonment of the contract as matter of law. The plaintiff notified the defendant that because of the delay in unloading his vessels at New York, he might be unable to get back in time. He says, " I will advise you as soon as I am ready to leave." The season was growing late — the canal would be frozen over in December, and plaintiff evidently feared that because of the con-

tinued delay, for which he asserted he was not responsible, it might be impossible to get the pipe through in time. He, therefore, released the defendant from his obligations so that defendant might arrange to use other vessels or means of transportation instead of plaintiff's fleet which was tied up through no fault of plaintiff's. Plaintiff says: " I had the misfortune to be delayed so much unloading that my inspection on the steamboat runs out Oct. 23d and I am having trouble to get her passed, and at this time I cannot say just when I will be able to get away from here. I am in hopes that it will be sometime this week. I will advise you as soon as I am ready to leave." That the letter was not considered as a refusal or abandonment of the contract is shown by the fact that after this letter was written and received plaintiff tendered his boats and defendant loaded them.

The third counterclaim upon which a verdict was directed for defendant for sixty-two dollars and fifty cents is subject to the same objection. In view of the antecedent delays referred to in the discussion of the first claim, the closing of the canal, and the war conditions, I think there was a question of fact for the jury whether the fault was plaintiff's and whether defendant was justified in shipping by another vessel without notice to plaintiff.

It follows that the judgment so far as it is based upon the direction of a verdict in defendant's favor upon the first and third counterclaims should also be reversed and a new trial granted.

Considering the defendant's appeal.

The learned trial justice submitted plaintiff's second cause of action, *i. e.,* for damages to plaintiff's barge *Edmund K. Taylor,* caused by negligent loading, to the jury and they found a verdict for plaintiff for $1,000. The pipes were loaded in such manner as to cause the barge to list over to port, a tier of pipes laid crossways over two lower tiers laid fore and aft, shifted with the listing of the barge and came up against the port side, driving it out eight inches and otherwise damaging the vessel. The defendant argues that the verdict is against the evidence, but there was evidence that the defendant's foreman, a stevedore, supervised the job of loading and stowing the pipes. The trial judge charged the

jury that they must determine how the accident happened, and then whose fault it was that it did happen. He submitted to the jury defendant's claim that the master or those in charge of the barge directed the loading. He told them that if plaintiff or his brother (who was in immediate charge of the barge) " knew, or had reason to know " that as a result of the method of loading adopted by defendant's servants, the boat would list and the cargo shift, then defendant would not be liable; that even though defendant was under the obligation of placing the load upon the ship and using reasonable care in doing so, still if plaintiff himself saw something done which endangered the vessel he should have stopped it. I think the charge was fair to the defendant, who took no exception to it. The evidence justifies the jury's finding that the accident was caused by defendant's negligence in the method of loading and placing the pipes on the boat.

Upon defendant's appeal the judgment entered upon the verdict of the jury in favor of plaintiff upon the second cause of action, and order denying defendant's motion to set aside the verdict, should be affirmed, with costs. Upon plaintiff's appeal the judgment of nonsuit as to the first cause of action, and the judgments in favor of defendant upon the first and third counterclaims entered upon a verdict of the jury directed by the court should be reversed and a new trial granted, with costs to plaintiff, appellant, to abide the event.

RICH, PUTNAM, BLACKMAR and JAYCOX, JJ., concurred.

Upon defendant's appeal the judgment entered upon the verdict of the jury in favor of plaintiff upon the second cause of action, and order denying defendant's motion to set aside the verdict, unanimously affirmed, with costs. Upon plaintiff's appeal the judgment of nonsuit as to the first cause of action, and the judgments in favor of defendant upon the first and third counterclaims entered upon a verdict of the jury directed by the court reversed, and new trial granted, with costs to plaintiff, appellant, to abide the event.